**WELLMORE COAL CORPORATION,
Plaintiff,**

v.

**GATES LEARJET CORPORATION,
Defendant.**

**Civ. A. No. 78–0291–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

Sept. 10, 1979.

James P. Jones, Penn, Stuart, Eskridge & Jones, W. Challen Walling, Bristol, Va., for plaintiff.

Jackson S. White, Jr., White, Elliott & Bundy, Howard C. McElroy, Abingdon, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This matter is before the court on defendant's motion to dismiss pursuant to Fed.R. Civ.P. 12(b), or, in the alternative, to transfer this action to the United States District Court for the District of Arizona, Tucson Division, pursuant to 28 U.S.C. § 1406. Defendant bases the motion on the following grounds: (1) The court lacks personal jurisdiction over the defendant; and (2) venue is improper and subject matter jurisdiction is lacking because of a forum selection clause included in the contract under dispute.

Plaintiff, Wellmore Coal Corporation, is a corporation organized under the laws of Virginia with its principal place of business in Virginia. Defendant, Gates Learjet Corporation, is a Delaware corporation with its principal place of business in Kansas. Personal jurisdiction over defendant is asserted by plaintiff pursuant to the Virginia long-arm statute, Va.Code § 8.01–328.1 (Supp. 1978). Process was served pursuant to Fed. R.Civ.P. 4(e) and Va.Code § 8.01–329 (Repl. Vol.1977), providing for substituted service on the Secretary of the Commonwealth of Virginia as statutory agent for nonresident defendants. The parties agree that the amount in controversy is over Ten Thousand Dollars; hence, subject matter jurisdiction is perfected under 28 U.S.C. § 1332(a)(2).

This case arises from breach of a contract entered into by the parties for the sale of an airplane from the defendant to the plaintiff. An area representative of the defendant flew to plaintiff's place of business in Virginia on July 7, 1978, to discuss the terms of a contract between the parties. After negotiation, plaintiff's representative, the president of Wellmore Coal Corp., signed a standard contract form which was sent to the defendant for acceptance at its corporate offices in Arizona. Contemporaneously with the Airplane Purchase Agreement, the plaintiff and defendant's agent modified and added to its terms by a document entitled "COVER LETTER New Aircraft Purchase Agreement." Plaintiff deposited with defendant the sum of One Hundred Thousand Dollars ($100,000.00) to secure delivery of the airplane in April, 1979. On September 29, 1978, plaintiff sent a mailgram to defendant cancelling its order on the aircraft and demanding a refund of its deposit. Defendant has refused to return the deposit, claiming the right to retain it as liquidated damages as specified under the Airplane Purchase Agreement. Plaintiff is suing for return of the deposit, alleging that it does not owe the sum under the terms of modification set out in the Cover Letter.

## I.

Any discussion of whether personal jurisdiction was properly asserted over the

defendant must be held in abeyance pending a determination of the validity and enforceability of the forum selection clause, which will determine whether the case should be transferred. It is not necessary for a court to have personal jurisdiction over a defendant in order to transfer a case, so long as subject matter jurisdiction is present. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Subject matter jurisdiction has been found to be present under 28 U.S.C. § 1332(a)(2).

## II.

The Airplane Purchase Agreement signed by plaintiff provided that the "courts of Arizona shall have exclusive jurisdiction to hear and determine all claims, disputes, actions or suits which may arise hereunder." On the basis of this provision, defendant moves that the court should dismiss the action or transfer it to the federal district court in Arizona under 28 U.S.C. § 1406 because of improper venue or lack of subject matter jurisdiction. To defeat the motion, plaintiff argues that the Cover Letter filled out by the parties was a new contract that superceded the Airplane Purchase Agreement and, consequently, the absence of a forum selection clause in the new contract will prevent transferral or dismissal of the action. Defendant counters with the proposition that the Cover Letter merely constituted a modification of the original agreement.

■ The court feels that the parties clearly intended the Cover Letter to be an additional instrument to be read in connection with the Purchase Agreement. It is obvious that when dealing with a standard printed contract it may be necessary to make changes in the terms to fit it to the specifications of the parties. If no room is provided for such changes or if it is impossible to delete printed matter and insert handwritten terms, then it may be necessary to make the changes on an additional sheet. In addition, as Professor Corbin has written:

Any business transaction in which a contract is made consists of a good many

communications and other actions. . . The terms finally agreed on may be fully and accurately "integrated" in a single paper document, one that certainly is not to be torn apart in the process of interpretation. In many cases, however, the terms of agreement may be expressed in two or more separate documents. . . [i]n every such case, these documents should be interpreted together, each one assisting in determining the meaning intended to be expressed by the others.

3 Corbin on Contracts § 549 (1960). The Restatement also agrees that a writing or writings that form part of the same transaction should be interpreted together as a whole. Restatement of Contracts § 235(c) (1932).

Hence, the added and modified terms in the Cover Letter will have to be read in connection with the Airplane Purchase Agreement "in order to ascertain the entire intent of the parties." 17 Am.Jur.2d *Contracts* § 470 (1964). The Cover Letter does not include essential terms of the contract, rather it only speaks to special conditions regarding trade-in arrangements, additional pilot training and costs, designation of persons authorized to sign commitments, and limitation on liability in event of buyer's cancellation. Price, description, and quantity of the subject of the contract are not included.

In accordance with the above, plaintiff's contention that the Cover Letter was a new contract is rejected by this court. Both instruments should be considered together as was intended by the parties at the time of execution of the agreements.

## III.

Plaintiff also contends that the motion to dismiss or transfer should be denied because the forum selection clause is invalid and, therefore, is unenforceable.

The trend toward enforcing forum selection clauses is relatively recent, reflecting a distinct change from the previous negative attitude courts had toward "jurisdiction-ousting" clauses. *See* Annot., 56 A.L.R.2d

300 (1957); 20 Am.Jur.2d *Courts* § 141 (1965). In 1972, the Supreme Court indicated its approval of forum selection clauses in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Court held therein that, at least in admiralty suits, forum selection clauses "are prima facie valid," *id.* at 10, 92 S.Ct. 1907, and should be enforced unless the party resisting application of the clause can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916. Although *Bremen* was an admiralty suit, there is language in the case to support the proposition that its test should be applicable to diversity suits because the same principles on which it is based apply to interstate commercial activity:

> The barrier of distance that once tended to confine a business concern to a modest territory no longer does so. . . . The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws in our courts. . . . [I]n an era of expanding world trade and commerce, the absolute aspects of the doctrine of the *Carbon Black* case [1] have little place and would be a heavy hand indeed on the future development of international commercial dealings by Americans. . . . Manifestly much uncertainty and possible great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place where the Bremen or Unterweser might happen to be found. The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting.

*Id.* at 8–14, 92 S.Ct. at 1912, 1913, 1915.

█ Previous decisions have differed on whether this is an area that federal common law governs or whether application of state substantive law is appropriate. *See Cruise v. Castleton, Inc.*, 449 F.Supp. 564, 568 n. 4 (S.D.N.Y.1978); Maier, *The Three Faces of Zapata: Maritime Law, Federal Common Law, Federal Courts Law*, 6 Vand. J. Transanat'l L. 387, 397–98 (1973). Usually, a federal court sitting in Virginia must apply the substantive law of Virginia in a diversity case, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including the forum's choice of law rules. *Klaxon v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This court does not need to reach the issue of which should apply, however, for the state law that applies under *Erie* is in substantial conformity with the leading U.S. decision. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). "Since there is no significant difference between the federal and state rule, it is not necessary to choose between them." *Cruise*, 449 F.Supp. at 568.

█ In Virginia, the nature, validity, and interpretation of a contract is governed by the law of the place of contracting. *Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 426, 177 S.E.2d 610, 613 (1970). The Wellmore-Learjet contract provided that it was "NOT A BINDING CONTRACT UNLESS AND UNTIL IT IS EXECUTED BY AN AUTHORIZED OFFICIAL OF GATES LEARJET CORPORATION AT ITS OFFICES IN TUCSON, ARIZONA." Plaintiff's representative signed the agreement in Virginia, which was then sent to defendant at their offices in Arizona. The plaintiff's completion of the contract constituted an offer to purchase by the express terms of the agreement. It was clearly denoted as an offer and seemingly was understood by the plaintiff to be such. It was not an executed contract until it was signed in Arizona. *See Williamson Daily News v. Linograph Co.*, 47 F.2d 523, 524 (4th Cir.

1. *Carbon Black Export, Inc. v. SS Monrosa*, 254 F.2d 297, 300–01 (5th Cir. 1958), *petition for cert. dismissed*, 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723 (1959) (held that private contract cannot take away jurisdiction from a court).

1931); Restatement of Contracts §§ 19–22 (1932). Consequently, under Virginia's conflict of law rules, the place of contracting would be Arizona since it is the place where the last act necessary for a binding contract took place. *Brand Distributors, Inc. v. Insurance Co. of North America,* 400 F.Supp. 1085, 1089 (E.D.Va.1974).

██ In addition, Virginia adheres to the view that parties to a contract may stipulate the governing law: "Where . . . the parties to the contract have themselves expressly declared that their contract shall be held and construed as made with reference to a certain jurisdiction, that shows by what law they intended the transaction to be governed." *Union Central Life Ins. Co. v. Pollard,* 94 Va. 146, 151, 26 S.E. 421, 422 (1896). *See also Woodson v. Celina Mut. Ins. Co.,* 211 Va. at 426, 177 S.E.2d at 613; *Tate v. Hain,* 181 Va. 402, 410, 25 S.E.2d 321, 324 (1943). The contract at issue in this case provided that "[t]his Agreement shall be construed in accordance with and its performance shall be governed by the laws of the State of Arizona." This clause clearly exhibited the parties' intention to be governed by the laws of Arizona.[2] A Virginia court, however, might not enforce the governing law clause if there was no reasonable basis for the parties' choice.[3] *See*

*Tate, supra,* 181 Va. at 411, 25 S.E.2d at 324. In the instant case, however, there is a substantial relationship with the chosen law: the contract was accepted in Arizona; the aircraft was to be customized according to Wellmore's specifications in Arizona; pilot training was to take place in Arizona; delivery was to occur in Arizona. Furthermore, airplane mishaps can occur anywhere and it is reasonable to eliminate uncertainty and inconvenience in having to litigate a suit in some distant jurisdiction by requiring buyers to litigate in Arizona.

As mentioned above, Arizona law and federal law regarding forum selection clauses are in substantial conformity. The Arizona Supreme Court has expressed approval of the principles enunciated in *Bremen,* holding that "a forum selection clause that is fairly bargained for and not the result of fraud will be enforced so long as to do so is reasonable at the time of litigation and does not deprive a litigant of his day in court." *Societe Jean Nicolas et Fils v. Mousseux,* 123 Ariz. 59, 61, 597 P.2d 541, 543 (1979). Although *Mousseux* is not directly on point with the facts in the present case, this court feels that the Supreme Court of Arizona would uphold the forum selection clause in the Wellmore contract. The *Mousseux* case involved the enforce-

---

**2.** But, "[c]omity does not require the application of another state's substantive law if it is contrary to the public policy of the forum state." *Willard v. Aetna Casualty & Surety Co.,* 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973); *State of Maryland v. Coard,* 175 Va. 571, 578, 9 S.E.2d 454, 457 (1940).

Although application of Arizona's laws will result in the enforcement of the contract's forum selection clause, thereby depriving the Virginia plaintiff of a forum in its own state, the court does not feel that this will be a violation of Virginia public policy. Virginia public policy favors enforcement of contract clauses bargained for in good faith between parties of equal strength. For instance, Virginia courts have upheld the parties' right to contract as to the governing law. *See Union Central Life Ins. Co. v. Pollard,* 94 Va. 146, 26 S.E. 421 (1896); *Tate v. Hain,* 181 Va. 402, 410, 25 S.E.2d 321, 324 (1943); *Woodson v. Celina Mut. Ins. Co.,* 211 Va. at 426, 177 S.E.2d at 613.

**3.** In addition, Restatement (Second) of Conflicts § 187, Comment b states:

A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake . . . . A factor which the forum may consider is whether the choice-of-law provision is contained in an "adhesion" contract, namely one that is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the weaker party who had no real opportunity to bargain about its terms.

The plaintiff does not attempt to assert this defense to the application of Arizona law under the governing law clause. Even though the agreement was a standard printed contract, the plaintiff exhibited its ability to negotiate the terms of the contract by the modifications that were inserted in the Cover Letter. In addition, the clause was in the same size print as the remainder of the agreement and was labeled in boldface as "Applicable Law and Jurisdiction."

ment of a forum selection clause designating a French court as the arbitrator of all differences between the parties, the plaintiff being a French corporation and the defendant an Arizona resident and French citizen.[4] The court distinguished the only previous decision of the Arizona Supreme Court on the issue, which had disallowed enforcement of a forum selection clause, *Otero v. Banco de Sonora*, 26 Ariz. 356, 225 P. 1112 (1924), as being representative of the general rule at that time, and pointed out that the *Otero* "court also explained that at least part of the reason it held as it did was that Hermosillo courts were not functioning due to civil strife in Mexico." *Id.* at 60, 597 P.2d at 542. The court then described the evolution of the law as a "progression to the point that such clauses are generally enforceable," citing as examples *Bremen* and other state and federal cases that have upheld forum selection clauses governing the location of litigation. *See Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341 (3d Cir. 1966); *Reeves v. Chem Industrial Co.*, 262 Or. 95, 495 P.2d 729 (1972); *Central Contracting Co. v. C. E. Youngdahl & Co.*, 418 Pa. 122, 209 A.2d 810 (1965).

■ Having ascertained that the Arizona Supreme Court would rule favorably on the enforcement of the forum selection clause, the only issue left to be dealt with is whether the plaintiff has met its burden of proof in showing that operation of the clause would be unreasonable. The *Mousseux* court uses the *Youngdahl* opinion, *supra*, to set the standards for proof of such unreasonableness. "Mere inconvenience or additional expense is not the test of unreasonableness," it must be so unreasonable at the time of litigation that "substantial justice cannot be done" and that the party affected

"will be deprived of his day in court." 123 Ariz. at 61, 597 P.2d at 543. The plaintiff has failed to meet this burden of proof. The fact that plaintiff's witnesses are residents of Virginia is insufficient to rise to the level of unreasonableness.[5] The plaintiff has not shown that it will be deprived of its day in court.

## IV.

■ Since the forum selection clause has been found to be valid and enforceable, this court finds that the interests of justice will best be served by transfer of this action to the United States District Court for Arizona, Tucson Division. *See Full-Sight Contact Lens v. Soft Lenses, Inc.*, 466 F.Supp. 71, 74 (S.D.N.Y.1978). The defendant's motion to dismiss is hereby denied.

It is so ORDERED.

4. The Arizona court fails to point out that the plaintiff foreign corporation is the one attempting to use the state as a forum in contravention of the terms of the contract rather than the Arizona resident. No emphasis is placed on enforcement of the forum selection clause against the party who seemingly would be favored by the operation of the clause, not even in dicta. Consequently, no distinguishing point can be drawn from the relative positions of the

parties in the *Mousseux* case and the case at hand. *See, e. g., Zapata Marine Service v. O/Y Finnlines, Ltd.*, 571 F.2d 208 (5th Cir. 1978).

5. The fact that two of defendant's witnesses are not residents of Arizona does not lend credence to plaintiff's argument—it will be the defendant's expense to transport these witnesses to Arizona, not the plaintiff's.