**AVTEX FIBERS, INC., Plaintiff,**

v.

**DAILY EXPRESS, INC., and Southern Spindle and Flyer Company, Inc., Defendants.**

**Civ. A. No. 82–0049–H.**

United States District Court, W.D. Virginia, Harrisonburg Division.

Feb. 16, 1983.

John E. Wetsel, Jr., Kuykendall, Costello & Hanes, P.C., Winchester, Va., for plaintiff.

David J. Andre, Thomas V. Monahan, Winchester, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

Plaintiff, Avtex Fibers, Inc., (Avtex) brings this diversity action against the defendants, Daily Express, Inc., (Daily Express) and Southern Spindle and Flyer Company, Inc., (Southern Spindle) for their alleged negligence in the rigging, loading, and transporting of five yard textile twisters (Ratti Twisters). Plaintiff is a New York corporation engaged in the textile fiber business with its principal place of business in Front Royal, Virginia. Daily Express is a Pennsylvania corporation and common carrier, with its principal place of business in Carlisle, Pennsylvania, while Southern Spindle is a North Carolina corporation engaged in the moving and rigging of textile machinery.

In its complaint, Avtex alleges that by purchase order dated January 25, 1980, it contracted with Southern Spindle for the rigging, loading, and carriage of five yard twisters from Avtex's Radford, Virginia, facility to Meadville, Pennsylvania, which contract included rigging and loading said five twisters on cradles at Radford, Virginia, and transporting them to Meadville, Pennsylvania. Avtex contends that following the execution of the purchase order, Southern Spindle then arranged for Daily Express to transport the said five textile twisters to Meadville. Pursuant to the carriage of the Ratti Twisters, which were rigged and loaded by Southern Spindle and transported by Daily Express, Daily Express executed and delivered bills of lading acknowledging receipt of said equipment in apparent good order, and contracting for the carriage and delivery of the same to Meadville in a good and reasonable condition. Finally, plaintiff alleges that despite the fact that the said Ratti Twisters were delivered to the defendants in a sound condition, they were delivered to the plaintiff, at Meadville, in a damaged condition as a result of the defendants' negligence. Plaintiff asserts that it has incurred injury in the amount of $8,547.88, for the repair of the equipment, and of $5,356.62 of consequential damages for the denial of the use of the equipment during the period of repair. Plaintiff also seeks reasonable attorney's fees and interest on its claim, at the rate of 10 percent per annum, from July 22, 1980.

Both Daily Express and Southern Spindle have filed answers to plaintiff's complaint denying they were negligent or liable to the plaintiff in any amount, for their respective parts in the rigging, loading, and transporting of the Ratti Twisters. In addition, both defendants have filed cross claims against each other, seeking relief for any amount they may be adjudged liable to Avtex. In their cross claims, Daily Express alleges that Southern Spindle was negligent in rigging and loading the said equipment, while Southern Spindle claims that Daily Express was negligent in transporting the equipment.

This action is now before the court on both defendants' oral motion that the court deny the plaintiff's claim for consequential damages. It is the defendants' position that, as a matter of law, consequential damages are not a recoverable element by Avtex, under the contract of carriage in question. It is the position of both defendants that, should the plaintiff's claim for consequential damages fail, the court must dismiss this action as to both defendants on the grounds that plaintiff's complaint will have failed to seek recovery for the requisite jurisdictional amount for an action brought pursuant to 28 U.S.C. § 1332.

### Statement of Facts

In the period between January 10 and January 25, 1980, various telephone calls took place between representatives of Avtex and Southern Spindle, which culminated in a call on or about January 25, 1980, between Mr. Joseph Cervone, Purchasing Manager of Avtex in Meadville, Pennsylvania, and W.L. Stewart, a Southern Spindle Vice-President in Charlotte, North Carolina. Mr. Cervone, as in previous conversations, expressed a desire to have five Ratti Twisters loaded at the Avtex plant in Radford, Virginia, and transported to Meadville, Pennsylvania. Southern Spindle, because it did not have ICC operating rights into

Pennsylvania, agreed to load the five Ratti Twisters only and quoted a price for that portion of the job. Southern Spindle agreed, however, to assist in locating a hauler, the defendant Daily Express, but takes the position that Avtex and Daily Express contracted directly for the hauling.

During the January 25, 1980, phone conversation, Mr. Cervone told Mr. Stewart that he would be issuing an Avtex purchase order to Southern Spindle. Pursuant to that statement, Mr. Cervone prepared Avtex purchase order No. MVA–61636 dated January 25, 1980, which was sent to Southern Spindle prior to its rigging and loading of the Ratti Twisters. When Mr. Stewart reviewed the purchase order, he noticed that it included freight charges, and since Southern Spindle did not have ICC rights to transport the equipment into Pennsylvania, Mr. Stewart called Mr. Cervone and explained that the purchase order was unacceptable for that reason. Mr. Cervone agreed to delete the freight charges, and Mr. Stewart confirmed that fact in a letter to Mr. Cervone dated January 28, 1980.

The five Ratti Twisters were loaded by Southern Spindle, and delivered by Daily Express to the Avtex plant in Pennsylvania between January 28 and February 5, 1980. The first contact between Daily Express and Avtex was when Daily Express arrived at Avtex's Radford facility in order for the Ratti Twisters to be loaded upon its trailers. At that time, five bills of lading were executed between Avtex and Daily Express. After completion of the work, Avtex issued "Change Order No. 1", dated February 12, 1980, by which the earlier purchase order was formally amended deleting the freight charges as agreed by Messrs. Stewart and Cervone on January 28, 1980.

*Southern Spindle and Flyer Co., Inc.*

The parties are in agreement in two respects. The first is that because the last act necessary for the creation of a binding contract took place in North Carolina, the law of the case is that of the State of North Carolina. *Wellmore Coal Corp. v. Gates Lear Jet Corp.,* 475 F.Supp. 1140 (W.D.Va.

1979). The second is that special damages, i.e., consequential or incidental damages, are only recoverable where the contract of carriage itself imposes such liability or where actual notice is given to the carrier. *See, Zarn, Inc. v. Southern Railway Co.,* 50 N.C.App. 372, 274 S.E.2d 251, *aff'd* 304 N.C. 189, 282 S.E.2d 421 (1981). Accordingly, the question now before this court is whether the parties contracted for consequential damages or whether the defendants had actual notice of the possibility of the injury and resultant claim for which plaintiff now seeks to recover consequential damages, i.e., damages from the loss of the use of the equipment.

From a review of the uncontested facts now before the court, it cannot be said that Southern Spindle agreed to be liable for consequential damages or that they were on actual notice of the possibility that Avtex would suffer such consequential damages from the loss of the use of the Ratti Twisters pending their repair. The facts show that Southern Spindle agreed to rig and load the five Ratti Twisters in a conversation between Mr. Cervone and Mr. Stewart on January 25, 1980. There is no contention that Mr. Cervone advised Mr. Stewart that Avtex intended to hold Southern Spindle liable for any consequential damages that may occur. All that is alleged is that Mr. Cervone told Mr. Stewart that he would be issuing a purchase order to Southern Spindle in accordance with the terms of their agreement. On January 28, 1980, Mr. Stewart received the purchase order and, upon noticing that freight charges were improperly included on the order, he called Mr. Cervone to explain that it was unacceptable for that reason. By letter dated January 28, 1980, Mr. Stewart returned the purchase order to Mr. Cervone unsigned. Subsequently, the work was performed *prior to* Avtex's issuance of Change Order No. 1. The change order was never accepted by Southern Spindle.

Nowhere in the evidence is there a suggestion Southern Spindle agreed or assented to the terms of the purchase order. A fair reading of the purchase order reveals

that a number of the printed paragraphs, including the one upon which Avtex relies, were inapplicable to the transaction involved. In short, those clauses refer to the sale of goods and not the performance of services. Avtex's reliance on a printed form under these circumstances is in essence a unilateral attempt to impose liability for consequential damages in a document issued after the contract was orally made and the work undertaken. A fair and reasonable reading of the purchase order reveals that at least Southern Spindle did not intend for those clauses to apply to the transaction between the parties.

In *Southern Spindle v. Milliken & Co.*, 53 N.C.App. 785, 281 S.E.2d 734 (1981); the Court of Appeals of North Carolina had occasion to decide an action similar to the one at bar. In that action, the plaintiff contracted with the defendant for the "rigging, loading and transportation" of certain machines. After plaintiff had performed a substantial portion of its services, it received from the defendant an unsolicited form document entitled "Purchase Order", on which defendant had typed a description of the services plaintiff had agreed to perform. The form contained numerous printed terms and conditions, including a provision regarding submission of all disputes to arbitration. Plaintiff, who was not selling any merchandise to the defendant, did not regard the printed portions of the form as legally binding, although the plaintiff did acknowledge receipt of the purchase order and returned it to the defendant.

A dispute arose between the two parties and the defendant sought to invoke the arbitration clause printed on the back of the purchase order form. The North Carolina court held that the parties had already entered into an oral contract and that the defendant's act in sending forth the purchase order was nothing more than an offer to alter the existing contract by adding certain terms and conditions. The court noted that the parties to a contract may agree to change its terms; but the new agreement, to be effective, must contain the elements necessary to the formation of a contract. In that case, the North Carolina court held that at least one of the necessary elements was missing, because the record failed to disclose that the plaintiff accepted the defendant's offer to add to the original contract. In so holding, the court noted that mere acknowledgment of receipt of the purchase order form did not constitute assent to its terms. The *Milliken* court also pointed out that the record failed to establish execution of the form containing the agreement to arbitrate by anyone on behalf of the plaintiff.

This court recognizes that in *Milliken,* "the plaintiff had performed a portion of those services prior to the time defendant submitted its purchase order," while the instant defendant had not yet performed upon receiving the original, defective purchase order. However, this court finds the *Milliken* court's reasoning persuasive authority for the proposition that mere acknowledgment of the receipt of the purchase order form does not constitute assent to its terms and that the record must demonstrate that Southern Spindle either executed the form or assented to it in some other way. This, the record does not do.

Because this court cannot find that Southern Spindle either agreed to be liable for consequential damages in the rigging and loading of the five Ratti Twisters nor that it had actual notice of the possibility of the injury for which Avtex seeks relief, the court must hold, as a matter of law, that Southern Spindle cannot be held liable for consequential damages under North Carolina law. Finding, absent a claim for consequential damages, that plaintiff's claim falls short of the requisite jurisdictional amount, exclusive of interest and costs, an appropriate Order will this day enter dismissing plaintiff's claim for lack of subject matter jurisdiction.

### *Daily Express, Inc.*

A careful review of the record demonstrates that the defendant Daily Express was never a party to the purchase order or change order discussed above. Consequently, because no other theory of liability for

consequential damages is asserted against Daily Express, the court must again enter an Order dismissing plaintiff's claim against Daily Express for lack of subject matter jurisdiction.