**CENTRAL COAL COMPANY, Plaintiff,**

v.

**PHIBRO ENERGY, INC., Defendant.**

**Civ. A. No. 87–0262–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

May 26, 1988.

David E. Cecil, Grundy, Va., for plaintiff.

Carroll D. Rhea, Roanoke, Va., for defendant.

MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This diversity action is before the court on the defendant's motion to dismiss or transfer. The case turns on the interpretation of a forum selection clause that the parties included in a purchase order contract for coal. The court concludes that the clause is of a mandatory nature and that the proper forum lies in New York City. Accordingly, the court grants the

defendant's motion and transfers the case to the United States District Court for the Southern District of New York.

## BACKGROUND

The plaintiff, Central Coal Company ("Central"), is a Virginia corporation with its principal place of business in Buchanan County, Virginia. The defendant, Phibro Energy, Inc. ("Phibro") is a Delaware corporation with its principal place of business in Greenwich, Connecticut. In the latter part of 1986 and early 1987, the parties negotiated a written purchase order ("contract") in New York City whereby Phibro agreed to purchase approximately 22,000 net tons of coal from Central. Phibro, a coal and coke trader, eventually shipped the coal to Iskenderun, Turkey. The contract was first executed by Phibro in Connecticut and then by Central in Virginia. Sampling and analysis of the coal was conducted in Norfolk, Virginia. A dispute arose over quality, and as a result Phibro allegedly refused full payment. Central then brought suit in the Circuit Court of Buchanan County, Virginia and Phibro removed the case to this court.

Phibro contends that Sections 14 and 15 of the contract provide for exclusive jurisdiction and venue in the federal courts of New York City. Central, on the other hand, argues that the contract provisions are merely permissive and do not mandate an exclusive choice of forum. The sections read as follows:

14. GOVERNING LAW: THIS CONTRACT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF NEW YORK, U.S.A. (WITHOUT REFERENCE TO ANY CONFLICT OF LAWS RULES).

15. JURISDICTION: EACH PARTY EXPRESSLY SUBMITS TO THE JURISDICTION OF THE STATE OF NEW YORK, U.S.A. AND THE FEDERAL COURTS SITUATED IN NEW YORK CITY AND TO SERVICE OF PROCESS BY REGISTERED MAIL.

Phibro drafted both sections; neither was specifically negotiated by the parties.

## APPLICABLE LAW

Any discussion of a forum selection clause must begin with the Supreme Court's decision in *The Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Prior to this admiralty case, American courts traditionally frowned upon forum selection clauses. "Rejecting this reasoning, the *Bremen* Court held that forum selection clauses are prima facie valid and should be enforced when made in arms-length transactions by sophisticated businessmen, absent some compelling and countervailing reason." *Sterling Forest Associates, Ltd. v. Barnett–Range Corporation*, 840 F.2d 249, 251 (4th Cir.1988). Whether the *Bremen* standard is applicable in all federal cases evokes a somewhat ambiguous response. The Fourth Circuit Court of Appeals observed that it has "expressed its adherence to the *Bremen* rule on several occasions, recognizing as it did so that the rule is applicable to domestic commercial cases." *Sterling*, 840 F.2d at 251. Nevertheless, the court was careful to note that the applicable state law also followed *Bremen*. It therefore concluded that "whether the forum selection clause is treated as procedural or substantive ... the principles articulated in *Bremen* should be applied." *Sterling*, 840 F.2d at 251. *See also General Engineering Corporation v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356–57 (3rd Cir.1986) (federal courts not bound as matter of federal common law to apply *Bremen* because interpretation of contracts is usually matter of state law).

■ In the final analysis, the choice of law question is not determinative. Both state and federal law coincide. "In Virginia, the nature, validity, and interpretation of a contract is governed by the law of the place of contracting." *Wellmore Coal Corporation v. Gates Learjet Corporation*, 475 F.Supp. 1140, 1143 (W.D.Va. 1979). The last act necessary for a binding contract, execution by Central, occurred within Virginia. Accordingly, Virginia law would normally be applicable. Nevertheless, Virginia allows parties to stipulate governing law provided that a reasonable

basis exists for the choice and it is not contrary to public policy. *Id.* at 1144. As previously noted, Section 14 of the contract provides for the application of New York law. The negotiation of the contract in New York City provides a reasonable basis for this choice. Finally, this court does not perceive any conflict with Virginia public policy. *See id.* at 1144 n. 2. New York law therefore governs the interpretation and application of the forum selection clause. It is significant to note that the New York courts have adopted the principles enunciated in *The Bremen. See Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corporation,* 696 F.2d 315, 317 (4th Cir.1982) (note New York cases cited therein).

## ANALYSIS OF THE MANDATORY/PERMISSIVE DISTINCTION

Although no doubt exists that this forum selection clause is enforceable under New York law, it is still an open question as to whether the clause is mandatory or permissive. Phibro argues that the New York forum is exclusive. Central replies that the clause is permissive and means nothing more than "Central Coal merely consented to the jurisdiction of the District Court of New York City, New York if Phibro should choose to sue in that particular forum." Central Memorandum at page 6.

When the court began its research, it hoped to locate New York state court cases that construed similarly worded provisions. Although that hope went unfulfilled, the court is not without guidance. Many federal courts have interpreted kindred clauses pursuant to the laws of New York and other jurisdictions. In truth, the actual jurisdictional law has not made much of a difference in the reported decisions.

A whole line of decisions have interpreted forum selection clauses as mere permissive consents to jurisdiction or venue. This is in stark contrast to Phibro's assertion that "[n]o federal court has interpreted a forum selection clause in such a way." Phibro Memorandum at page 5. Some of these cases involved clauses almost identical to the one at issue in this proceeding. *See, e.g., Keaty v. Freeport Indonesia,*

*Inc.,* 503 F.2d 955, 956 (5th Cir.1974) (clause stated that "the parties submit to the jurisdiction of the courts of New York."); *Heyco, Inc. v. Heyman,* 636 F.Supp. 1545, 1547 (S.D.N.Y.1986) (clause stated that the parties "expressly hereby submit to the personal jurisdiction of the courts of original jurisdiction of the State of New Jersey for resolution of all disputes arising under this Agreement."). Many other federal courts have interpreted similar clauses to be permissive, not exclusive choices of forum. *See, e.g., Credit Alliance Corporation v. Crook,* 567 F.Supp. 1462 (S.D.N.Y.1983) (and cases cited therein).

Although the court finds Phibro's aforementioned assertion incredible, its position nevertheless carries the day. The Fourth Circuit recently reversed a district court that failed to give full effect to a forum selection clause. *See Sterling Forest Associates, Ltd. v. Barnett–Range Corporation,* 840 F.2d 249 (4th Cir.1988). In this case, decided after the parties in the case at bar submitted their briefs, the Fourth Circuit interpreted the following to be a mandatory forum selection clause: "the parties agree that in any dispute jurisdiction and venue shall be in California." *Id.* at 250. The district court had interpreted the language to mean that "jurisdiction and venue shall exist in California" and "elsewhere as well." *Id.* at 251. In rejecting this approach, the Fourth Circuit stated that

> The problem with this interpretation is that a it makes the forum selection clause meaningless and redundant. Because Barnett is a California corporation, federal jurisdiction and venue statutes provide as a matter of law that California is a proper state for suit. *See* 28 U.S.C. §§ 1332(a), (c) and 1391(c). It is a well established principle of contract construction that clauses which, as here, are knowingly incorporated into a contract should not be treated as meaningless.... The only meaningful reason for including the forum selection clause in the instant case was to make California jurisdiction and venue exclusive.

*Id.* (citations deleted). The court further opined that the district court's "egregious

misinterpretation" is "evidence of a continuing [judicial] hostility" to forum selection clauses despite the mandate of *The Bremen. Id.* at 252. In light of the position taken by the Fourth Circuit in *Sterling* and other cases, this court must be very careful that it does not minimize the effect of the present forum selection clause.

■ Although other interpretations are reasonable, the court concludes that the clause is mandatory and that the exclusive forum lies in New York City. The language "expressly submits to the jurisdiction of the state of New York" is perhaps not as strong as it could be, but the meaning is clear enough. To interpret it otherwise would render the clause "meaningless and redundant." *Sterling,* 840 F.2d at 251. Moreover, Section 15 is titled "Jurisdiction." If the parties intended the clause to be merely permissive, it is doubtful that they would have employed such terminology. The fact that Section 14 very clearly stipulates that New York law is to govern lends further support to a mandatory interpretation of Section 15. The person who negotiated the contract for Phibro, Mark Brugnoli, states by sworn affidavit that although the parties did not negotiate Sections 14 and 15, Phibro still intended New York jurisdiction to be "required." Central argues in its brief that the clause was meant to be permissive. It is interesting to note, however, that Central's negotiator, Clark Wisman, does not explicitly state in his sworn affidavit that Central intended the clause to be permissive. He merely asserts that the parties did not negotiate Sections 14 and 15 and that Central thought that it had to accept the provisions as Pribro had drafted them. In contrast, Brugnoli states that they were open for negotiation had Central chosen to take that approach.

The court is aware of several cases that have interpreted similar clauses to be mandatory. *See e.g., Furry v. First National Monetary Corporation,* 602 F.Supp. 6, 8–9 (W.D.Okla.1984) (clause stated that the parties "agree[ ] to submit to the jurisdiction" of the Michigan courts); *S. Lewis Lionberger Company v. Edward G. Gerritts, Inc.,* — F.Supp. ——, C.A. No. 87–0338–R, Slip op. at 2–3 (W.D. Va. October 19, 1987) (clause stated that party "submits itself to the jurisdiction" of the Florida federal courts "for the resolution of any and all disputes" over ten thousand dollars). Although the contract language in these two decisions is not identical to that of this case, the similarities are obvious. Moreover, *Lionberger,* decided by Chief Judge Turk, is particularly persuasive as a decision from another division of this very court.

The clause at issue is mandatory. If the parties wished it to be permissive, they should have drafted it so that that interpretation would be clearly evident.

### APPLICATION OF THE BREMEN STANDARD

■ Under *The Bremen* standard, "forum selection clauses are prima facie valid and should be enforced when made in arms-length transactions by sophisticated businessmen, absent some compelling and countervailing reason." *Sterling,* 840 F.2d at 251. The contract must be "unaffected by fraud, undue influence, or overweening bargaining power." *The Bremen,* 407 U.S. at 12, 92 S.Ct. at 1914. The burden is on Central to "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916.

Central does not allege that the contract was affected by fraud, undue influence, or overreaching. Primarily, Central chose to live or die on its argument that the clause does not mandate an exclusive forum. At best, Central's brief and affidavit possibly suggest that Phibro possessed overweening bargaining power and that New York would be a seriously inconvenient forum. For example, Central's contract negotiator, Clark Wisman, states in his affidavit that "Central Coal has always assumed that if it wants to sell coal to Phibro, that the terms of Phibro's forum selection clause are non-negotiable and must be agreed to." Affidavit at page 2. In contrast, the affidavit of Phibro's negotiator insists that the clause was open to negotiation. In any event, "[t]here is nothing in the record to suggest that [Central] is an unsophisticated

entity lacking sufficient commercial expertise to be able to decide whether to enter into a given contract." *Bryant Electric Company, Inc. v. City of Fredericksburg,* 762 F.2d 1192, 1197 (4th Cir.1985). As for the inconvenience argument, Central must "show that trial in the contractual forum will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *The Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917. Nothing in the record suggests that Central can meet this stringent standard. This forum selection clause is just and not affected by any disqualifying factors. Accordingly, it must be enforced.

### CONCLUSION

The forum selection clause in this case is mandatory. The exclusive forum is the federal district court located in New York City, New York. According to the standards of *The Bremen,* this court must enforce the parties' contract. The court therefore grants Phibro's motion and transfers the case.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.