## CIRCUIT COURT OF FAIRFAX COUNTY

Malpractice Research, Inc., d/b/a
Medical Quality Foundation

v.

Patsy Norman,
Bobby Norman,
Mary Norman, and
F. Anthony Edwards, II

May 22, 1991

Case No. (Law) 92560

By JUDGE JACK B. STEVENS

This matter has been under advisement by the Court following trial upon the merits upon this action for breach of contract by plaintiff, Malpractice Research, Inc., d/b/a Medical Quality Foundation (MQF) against defendants, Patsy and Bobby Norman, their daughter, Mary, and their attorney, F. Anthony Edwards, II, and the Normans' cross-claim against Edwards. MQF's claim is for non-payment under the contract, and the Normans' claim against Edwards is essentially for indemnity.

The contract provides for MQF, *inter alia*, to assist in obtaining medical experts to testify in a medical malpractice case in Michigan and provides for a 20% contingency fee to MQF in addition to certain set fees. The central issue in this case is whether or not that contingency payment provision is against public policy and unenforceable. A pivotal question in deciding that issue is what law governs that determination.

All of the defendants in this action, the defendants in the malpractice action, and the court in which the

malpractice action took place were located in Michigan at the time the contract in this case was executed. The performance of the contract took place in Michigan. Only the plaintiff MQF had contacts with Virginia. The contract, however, contains a "Governing Law" provision which reads in pertinent part as follows:

> 14. *Governing Law.* The parties agree that this Contract will be construed in conformity with the laws of the Commonwealth of Virginia [and] that the Contract is made in the Commonwealth of Virginia . . . .

Under Virginia choice of law rules, the validity of a contract is generally determined by the law of the place where it is made, unless it is to be performed in another place; and then it is governed by the law of the place where it is to be performed. *Poole v. Perkins*, 126 Va. 331, 334, 101 S.E. 240 (1919). However, Virginia courts generally uphold choice of law provisions in contracts, *Union Central Life Ins. Co. v. Pollard*, 94 Va. 146, 151, 26 S.E. 421, 422 (1896), so long as there is a reasonable basis for the choice, and the law chosen is not contrary to the public policy of the state with greater interest and whose law would otherwise govern. *Central Coal Co. v. Phibro Energy, Inc.*, 685 F. Supp. 595 (W.D. Va. 1988); *Wellmore Coal Corp. v. Gates Learjet Corp.*, 475 F. Supp. 1140 (W.D. Va. 1979); Restatement of Conflicts of Law 2d, *Contracts*, § 187(2).

The Restatement of Conflicts of Law 2d, *Contracts*, sect. 187(2), in pertinent part states:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue,[1] unless . . . .

---

[1] Comment (d) to Subsection (2) reads in part: "d. Issues the parties could not have determined by explicit agreement directed to particular issue . . . Examples of such questions are those involving . . . substantial validity . . ."

(b) application of the law of the chosen state would be contrary to a fundamental policy[2] of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties . . . .

In the case at bar, the contract was to be performed in Michigan, where all but the plaintiff resided, where the defendants executed the contract, and where the litigation that was the subject matter of the contract was pending. Under the holding in *Poole, supra,* Michigan's law would govern the question of validity, absent an effective choice of law provision.

In *Dupree v. Malpractice Research, Inc.,* 179 Mich. App. 254, 445 N.W.2d 498 (1989), a case involving the same plaintiff and a substantially similar contract as the case at bar, including the same 20% contingent fee, the Court agreed with the trial court that contracts of this nature were violative of the public policy of Michigan and void. The Court went on to state that recovery under a quantum meruit theory, while not necessarily inappropriate where a contract is void as against public policy, would be inappropriate in the case of the contingent fee contract at issue. The Court stated that:

> where a contract violates strong, established public policies, quantum meruit "will not be given in aid of or to encourage unprofessional conduct infringing the integrity of judicial proceedings" . . . In this case, we find contin-

---

[2] Comment (g) to Subsection (2) reads in part: "g. When application of chosen law would be contrary to fundamental policy of state of otherwise applicable law . . . . No detailed statement can be made of the situations where a 'fundamental' policy of the state of the otherwise applicable law will be found to exist. An important consideration is the extent to which the significant contacts are grouped in this state . . . . To be 'fundamental,' a policy must in any event be a substantial one . . . . [A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal . . . ."

gent fee contracts of the type at issue *so repugnant to established Michigan public policy,* as expressed by statutes, court rules and court opinions, that to permit recovery on a quantum meruit basis would defeat or subvert those policies and threaten the integrity of the judicial system.

The statutory scheme in Michigan evidences a strong public policy against contingent fee agreements involving expert witnesses . . . .

*Id.,* 445 N.W.2d 498 at 500 (emphasis added).

Plaintiff argues that the defendants are estopped to assert the contract is against public policy because the Michigan trial court approved the contingency contract at issue here and because the defendants seek to change their position to the detriment of the plaintiff after plaintiff has relied and performed on the court-approved contract, citing *Employers Ins. Co. v. Great American,* 214 Va. 410 (1973). The *Employers* case, on its facts, would more properly be termed a waiver case than an estoppel case. In any event, *Employers* involves a voidable, not a void, contract. A contract against public policy, however, is void. *Cohen v. Mayflower Corp.,* 196 Va. 1153, 1160 (1955). Further, no facts concerning the validity of the contract here were *actually litigated* in Michigan. As such, the doctrine of collateral estoppel is inapplicable. *Snead v. Bendigo,* 240 Va. 399 (1990).

In the light of *Dupree,* the direction of the Restatement, and the cases previously cited, the Court is constrained to hold that the contractual choice of law provision in the contract here must give way to the public policy of Michigan. The Court therefore rules that the contract at issue here is unenforceable in Virginia as against the public policy of Michigan. The Court does not reach the issue of whether the contract is against the public policy of Virginia.