The EQUITABLE TRUST COMPANY, Appellant,

v.

BRATWURSTHAUS MANAGEMENT CORPORATION, Defendant,

and

Francis J. Plombon and Patricia A. Plombon, Appellees.

No. 74–1247.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 6, 1974.

Decided April 25, 1975.

James E. Wesner, Washington, D. C. (Ginsburg, Feldman & Bress, Washington, D. C., on brief), for appellant.

Laurence G. Roman, Arlington, Va., for appellees.

Before BOREMAN, Senior Circuit Judge, and FIELD and WIDENER, Circuit Judges.

BOREMAN, Senior Circuit Judge:

This action was brought in the United States District Court for the Eastern District of Virginia by The Equitable Trust Company (hereafter "Equitable"), a Maryland corporation, with its principal place of business in Baltimore, against Bratwursthaus Management Corporation (hereafter "BMC"), incorporated under the laws of Virginia with a business office in Towson, Maryland, Francis J. Plombon and Patricia A. Plombon, citizens of Virginia, and others. The parties filed a written stipulation as to admitted and uncontested facts and other facts were found by the court. Evidence consisted of exhibits and the testimony of witnesses.

On December 11, 1968, defendants Francis J. Plombon and Patricia A. Plombon executed, under seal, a guaranty agreement whereby they jointly and severally guaranteed payment of any and all discounts, loans or advances made or to be made by Equitable to BMC, limiting, however, their liability as guarantors to a maximum of $35,000 plus attorneys' fees and other collection costs. The guaranty agreement is reproduced in full in APPENDIX A which is appended hereto and made a part of this opinion. The guaranty agreement was a printed form which was supplied by Equitable. One William M. Clements, vice-president of BMC, had made tentative arrangements with Equitable for BMC to borrow the sum of $35,000, but Equitable would not make the advance until the Plombons and Mr. and Mrs. Clements had guaranteed the payment thereof. The Plombons signed the guaranty agreement at their home in Virginia and it was returned either by mail or personal delivery to the BMC office at Towson, Maryland, for return to Equitable.

On December 17, 1968, Equitable made the loan to BMC which was evidenced by a note for that amount payable to Equitable in the sum of $35,000, executed by BMC through its vice-president, William M. Clements. Subsequently, on May 5, 1969, a note in the amount of $60,000 payable to Equitable at Baltimore, Maryland, was executed for BMC by Ronald E. Brown, its secretary. As the district court noted in its opinion, "It is believed that this [$60,000] note included the orig-

inal $35,000.00 loan." On June 2, 1969, another note payable to Equitable at Baltimore, Maryland, in the sum of $25,000, was executed for BMC by Brown, its secretary. At or about the time of the execution of the notes for $60,000 and $25,000 Mr. Clements brought to Mr. Plombon certain papers including another form of guaranty for a sum greater than the original $35,000, but the Plombons refused Mr. Clements' request to guarantee the payment of any sums borrowed by BMC from Equitable in excess of the $35,000 although they did not then notify Equitable to that effect.

BMC admitted liability on the notes and consented to the entry of judgment against it in the amount of $85,000 plus interest from the date of the last payment and reasonable costs of collection including attorneys' fees. It is undisputed that the loans made to BMC by Equitable exceeded $35,000. In this action Equitable sought to recover from the Plombons the sum of $35,000 plus attorneys' fees and other collection costs under the terms of the guaranty agreement set forth in APPENDIX A.

The district court denied recovery to Equitable on said guaranty of payment agreement, held that the choice of law rules of Virginia were applicable, and concluded that the case was governed by Virginia contract law. The court then further determined that under that law Equitable could not recover from the Plombons because the guaranty was conditional and Equitable had breached a *condition* of the guaranty by advancing to BMC amounts in excess of $35,000. On appeal Equitable challenges each of these holdings. We reverse.

The Plombons, in successfully defending before the district court against liability, contended that the language in the guaranty, that the guarantors "requested Trust Company [Equitable] to make and/or continue such discounts, loans and/or advances not exceeding at any one time THIRTY–FIVE THOUSAND dollars . . . " constituted under Virginia law a condition which was breached by Equitable when it made loans totaling $85,000. The questions raised on appeal are whether the district court correctly determined that Virginia law is applicable here and whether Virginia law, if controlling, requires a finding that Equitable had breached a *condition* of the guaranty thereby precluding its recovery.

▮▮▮ We hold that, in this situation, the law of Maryland, rather than that of Virginia, governs and determines the liability of the Plombons under their guaranty agreement. In this diversity action we apply, as we must, Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the choice of law principles recognized in Virginia and we conclude that the courts of Virginia would look to and apply Maryland law in determining the questions here presented. Virginia adheres to the principle that the law of the place of performance governs questions arising in connection with the performance of a contract. Arkla Lumber and Mfg. Co. v. West Virginia Timber Co., 146 Va. 641, 648, 132 S.E. 840, 842 (1926). It is clear that all acts of performance as between Equitable and the Plombons were to take place in Maryland. Equitable made the advances from its offices in Baltimore to the offices of BMC in Towson, Maryland. Payment of the notes issued by BMC to Equitable evidencing Equitable's loans, expressly were to be made in Baltimore.[1] The only place where the Plombons could have tendered performance of their obligation would have been at Equitable's offices in Baltimore; all acts of performance of all obligations of BMC and the Plombons as guarantors under their agreement were to take place in Maryland. Since the law of the place of performance determines questions relating to performance, whether Equitable breached a condition of the Plombons' guaranty agreement by making loans in excess of $35,000 is a question to be determined under Maryland law.

---

1. The notes issued by BMC to Equitable provided for payment "at The Equitable Trust Company, Baltimore, Maryland."

■ We reach the conclusion that, under Maryland law, Equitable may enforce the Plombons' guarantee of payment. In Walton v. Washington County Hospital Association, 178 Md. 446, 13 A.2d 627 (1940), there are set forth the applicable rules of construction.

A contract of guaranty is a form of commercial obligation, which should be construed in furtherance of its spirit without strict technical nicety to promote liberally the use and convenience of commercial intercourse. The words of a guaranty should receive a fair and reasonable interpretation to effectuate the intention of the parties, and the circumstances accompanying the transaction may be considered in seeking the intention of the parties. The court should give the instrument that construction which will best accord with the intention, as manifested by the language in the light of all the surrounding circumstances, without stretching the words beyond their import in favor of the creditor or restricting them in favor of the grantor. . . . It is a cardinal rule of construction that the intention of the parties to a contract must prevail, unless inconsistent with some rule of law, and this intention must be gathered from the terms of the contract considered as a whole, and not from the clauses considered separately. [Citation omitted.] But where one part of a contract of guaranty consists of a recital of premises, while another con-

tains the actual obligations to be performed, an incidental recital is not controlling over the direct provisions of the obligatory part. 178 Md. 446, 450–452, 13 A.2d 627, 629–630.

Giving the language of the instrument as a *whole* a "fair and reasonable interpretation," in light of the surrounding *circumstances,* while according greater weight to the obligatory covenants than we give to the recital of premises in the introductory preamble, we are of the opinion that Maryland courts would hold that the guaranty was *limited* to $35,000 plus costs of collection including attorneys' fees and that the Plombons' obligation to pay was not *conditioned* upon the provision that credit should not be extended in excess of that amount.

■ Assuming, however, *arguendo,* that Virginia laws were applicable, the result would be the same. The district court relied primarily on William Schluderberg-T. J. Kurdle Co. v. Trice, 198 Va. 85, 92 S.E.2d 374 (1956). However, the language of the guaranty agreement involved in that case [2] could be interpreted logically as a condition of the guaranty rather than as a mere limitation of liability. Furthermore, the *Trice* opinion indicates that the same broad principles of construction which we have found applicable in Maryland are applicable as well under Virginia law.

[T]here shall be neither a strict nor a liberal construction of a guaranty, but that it shall receive a reasonable con-

2. The material parts of the guaranty given to the plaintiffs in *Trice*, upon which the plaintiff's claim was based, may be stated as follows:

In consideration of your supplying Food Kraft, Inc., . . . with goods in your line, upon credit, we, Franklin A. Trice and E. W. Bell do guarantee you the payment of and we, . . . promise to pay such sum or sums of money as Food Kraft, Inc., . . shall owe for goods purchased at any time, provided that at no time shall the total indebtedness of Food Kraft, Inc., . . . to you exceed the sum of Twenty-Five Hundred and no/100 Dollars . . . .

92 S.E.2d at 375. The language of the *Trice* guaranty expressly limits the *total indebted-*

ness of the principal debtor while the wording of the Plombons' guaranty, especially in the obligatory covenants, reads only as a limitation of their liability.

The surrounding circumstances also serve to distinguish the meaning of the two guaranty instruments. The court in *Trice* emphasized that a guarantor may wish to limit the indebtedness of the principal debtor in order to increase the likelihood that the principal debtor would remain solvent, and, if the guarantor should be required to pay, to increase the likelihood that the principal debtor would still have some assets which the guarantor could salvage. Such considerations are of little moment here, where Mr. Plombon, as president of BMC, had independent means of controlling the liabilities of the principal debtor.

struction and be fairly construed according to the intent of the parties in the same manner as other contracts are construed. . . . In arriving at this intention, generally little aid may be had from decisions on other contracts of guaranty, and the particular contract in question must be given effect according to its own expressed intention, as gathered from all the words and clauses used, taken as a whole, due regard being had also to the surrounding circumstances, especially where the expressed terms of the contract are ambiguous. 92 S.E.2d at 377.

A recent case, Bennett v. First National Bank of Norfolk, 213 Va. 672, 677, 194 S.E.2d 903, 908 (1973), affirmed these principles while finding the guaranty agreement was not abrogated or discharged when the principal debtor's liability exceeded the guarantor's limitation in that case. Thus, in ascertaining the meaning of the guaranty agreement as to the obligations of the parties respecting performance the same rules of construction are utilized in either jurisdiction. The application of the same rules of interpretation in Virginia which are applicable in Maryland would not cause us to reach a different result.

By way of summation, we reverse the district court's finding that the contract law of Virginia governs the case. We hold that the law of Maryland applies and that law would require enforcement of the guaranty. Additionally, we reach the conclusion that if Virginia law were controlling, the result would be the same. Accordingly, we remand the case to the district court for disposition in accordance with the views herein expressed.

Reversed and remanded.

## APPENDIX A

### GUARANTY

Whereas, BRATWURSTHAUS MANAGEMENT CORPORATION hereinafter referred to as "Borrower" is now indebted to The Equitable Trust Company, Baltimore, Maryland, hereinafter referred to as "Trust Company", for discounts, loans and/or advances already made by Trust Company and/or desires to establish a credit with Trust Company whereby Borrower may hereafter obtain discounts, loans and/or advances from time to time, and the undersigned, hereinafter referred to as "Guarantor" (whether one or more than one) requested Trust Company to make and/or continue such discounts, loans and/or advances not exceeding at any one time THIRTY FIVE THOUSAND Dollars ($35,000), and Trust Company is unwilling to comply with said request unless this guaranty is executed, but Trust Company by the acceptance hereof does not obligate itself to discount, loan and/or advance any particular amount.

NOW, THEREFORE, in consideration of the premises and the sum of One Dollar ($1.00) to Guarantor in hand paid by Trust Company, the receipt of which is hereby acknowledged, and of the making and/or continuing of such discounts, loans and/or advances to or for Borrower, Guarantor directly and unconditionally (jointly and severally, if more than one) guarantees to Trust Company the prompt payment at maturity of any and all liabilities of Borrower to Trust Company, whether now existing or hereafter from time to time arising, and whether or not of the kind herein referred to, not exceeding at any one time the sum of $35,000 plus attorneys fees and other collection costs.

Guarantor (jointly and severally, if more than one) agrees to indemnify and save harmless Trust Company against any loss, damage or liability, plus attorneys fees and other collection cost, not exceeding the aforesaid sum of $35,000 plus attorneys fee and other collection costs which Trust Company may suffer or incur through the making and/or continuing of any such discounts, loans and/or advances to or for Borrower.

This guaranty shall be a continuing one and shall bind Guarantor, and his or their respective personal representatives, for all discounts, loans and/or advances made by Trust Company to or for Borrower until notice in writing terminating

this guaranty has been received and acknowledged by Trust Company; providing, however, that Guarantor shall remain liable for all obligations of Borrower, not exceeding the aforesaid sum, contracted before the receipt and acknowledgment of such notice, nor shall any such notice from any one or more of Guarantors, and/or his or their respective personal representatives, in any manner affect, modify or lessen the obligation hereunder of the remaining Guarantors, if any, or their respective personal representatives, who have failed to give such notice.

Guarantor consents that, from time to time, without notice to Guarantor, the time of payment of any liabilities of Borrower covered by this guaranty may be extended in whole or in part and that any security held by Trust Company may be hypothecated, rehypothecated, exchanged, surrendered or sold and the proceeds applied in the discretion of Trust Company to any indebtedness of Borrower without affecting in any manner the liability of Guarantor hereunder, and Guarantor waives notice of acceptance, presentment, demand of payment, protest and notice of non-payment and any and all other notices of any kind in connection herewith.

This guaranty shall extend to any person, firm, partnership, or corporation to which or to whom Trust Company may transfer or assign any or all of the discounts, loans and/or advances covered by this guaranty, whether said transfer or assignment is made with or without recourse to Trust Company or by way of rediscount or otherwise.

All terms and conditions of this Guaranty shall be binding upon the personal representatives, heirs, and assigns of Guarantor or Guarantors, if there be more than one, until terminated as above provided.

Signed and sealed this 11 day of Dec. 1968.

Witness:

FRANCIS J. PLOMBON

_____    /s/ Francis J. Plombon    (SEAL)
_____    /s/ Patricia A. Plombon    (SEAL)
_____    _____    (SEAL)
_____    _____    (SEAL)
_____    _____    (SEAL)