The **CHESAPEAKE SUPPLY AND
EQUIPMENT COMPANY,**
Plaintiff,

**Commonwealth of Virginia, Intervenor,**

v.

**J.I. CASE COMPANY, Defendant.**

Civ. A. No. 88–1046–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 23, 1988.

Michael J. Chamowitz, Bruce B. McHale,
Chamowitz & Chamowitz, Alexandria, Va.,
for plaintiff.

Maurice J. McSweeney, Jane Golden Belford, Foley & Lardner, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

This case is a striking example of the potency of choice of law rules in a multistate contract context. It is a reminder that parties act at their peril when they fail to make explicit their choice of law and instead leave that decision to the conflicts rules of some future, perhaps unforeseen, forum.

The precise choice of law issue presented here is whether Maryland, Virginia, or Wisconsin law applies to a heavy equipment dealer contract ("Agreement") executed in Maryland and Wisconsin, delivered in Maryland, and performed in Maryland, Virginia, and Delaware. Defendant is a Delaware corporation with its principle place of business in Wisconsin. Plaintiff is a Maryland corporation with branches in Maryland, Virginia, and Delaware. Since 1962, plaintiff has been operating under the Agreement or its predecessors as an authorized dealer of defendant's equipment in all three branch locations.[1] Each branch also sells other manufacturers' heavy equipment. The Agreement includes a provision permitting termination by defendant without cause upon six months notice. Defendant exercised this right. On March 11, 1988, defendant notified plaintiff that it was terminating the Agreement effective September 15, 1988.[2] The validity of that termination turns on the choice of law issue. If Virginia or Wisconsin law governs the Agreement, then arguably the termination notice would be ineffective. Statutes in those jurisdiction proscribe termination without cause in this context. If Maryland law applies, however, defendant claims that termination without cause is valid.

This matter came before the Court initially on plaintiff's motion for a preliminary injunction. By Order dated October 3, 1988, this Court accelerated the trial on the merits and consolidated the hearing for a preliminary injunction with the merits trial, pursuant to Rule 65(a)(2), Fed.R.Civ.P. The Court, *sua sponte*, ordered further briefing on the potentially dispositive choice of law issues. Both parties submitted additional briefs, and oral argument was heard on the choice of law issues on October 7, 1988, and again on October 28, 1988. Because defendant challenged the constitutionality of the Virginia Heavy Equipment Dealers Act, the Court certified this fact to the Virginia Attorney General and permitted the intervention of the Commonwealth of Virginia. *See* 28 U.S.C. § 2403(b). The Commonwealth was given the opportunity to express its views orally and in writing. The matter, having been fully briefed and argued, is ripe for summary disposition. Undisputed facts permit resolution of the choice of law question which, in turn, is dispositive of the case.

### Analysis

A. Choice of Law Question

■ In diversity suits, a federal court must apply the law of the forum state, including its choice of law principles. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Equitable Trust Co. v. Bratwursthaus Mfg. Corp.*, 514 F.2d 565, 567 (4th Cir.1975); *Witter v. Torbett*, 604 F.Supp. 298, 302 (W.D.Va. 1984). Thus, Virginia choice of law principles govern here. Virginia adheres to a traditional choice of law doctrine;[3] it has

---

1. The Agreement between plaintiff and defendant pertinent here became effective in 1978. The relationship of the parties prior to 1978 was governed by predecessor agreements.

2. Defendant has agreed to suspend termination of the Agreement pending the final resolution of this case.

3. *See, e.g., Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 287 (4th Cir.1987) (applying Virginia's traditional choice of law rules to an insurance contract; interpretation of contract governed by law of place of making); *Frye v. Commonwealth*, 231 Va. 370, 375, 345 S.E.2d 267, 272 (1986) (applying Virginia's "traditional rules applicable to conflicts of laws" in deter-

rejected the more flexible, "significant contacts" approach of the Restatement (Second) of Conflict of Laws the defendant urges the Court to adopt.[4] In Virginia, questions of breach are determined by the law of the place of performance,[5] but the validity, interpretation, and construction of a contract are governed by the substantive law of the place of contracting,[6] that is, "where the final act is done which is necessary to make [the contract] binding."[7] Here, plaintiff argues that the final binding act was the last signature on the Agreement. As the Agreement's signature pages clearly indicate, the last signatures were those of defendant's representatives and were apparently made in Wisconsin.

Accordingly, plaintiff contends that Wisconsin law should apply to questions of interpretation and validity. Plaintiff's argument, however, ignores the explicit terms of the Agreement which provide that "[t]his Agreement shall become effective as of 7–5, 1978, provided it has been fully executed by the parties *and a copy so executed has been delivered to Dealer.*" (emphasis added). The Agreement was delivered to plaintiff at its headquarters in Maryland. That delivery was the final act necessary to make the Agreement valid and binding.[8] It follows, therefore, that Maryland law applies to questions of interpretation, validity, or construction of the Agreement.[9] By contrast, performance of

mining which law applies to questions of procedure); *McMillan v. McMillan,* 219 Va. 1127, 1129–31, 253 S.E.2d 662, 663–64 (1979) (refusing to abandon Virginia's traditional choice of law rules in tort action in favor of the Restatement's "most significant relationship" test).

**4.** *See* Restatement (Second) of Conflict of Laws, § 188, at 575 (2d ed.1971) (absent a contractual forum selection clause, apply the law of the state "which, with respect to that issue, has the most significant relationship to the transaction and the parties").

**5.** *See* 16 Am.Jur.2d, Conflict of Laws § 96, at 160–61 (1979) ("Under the traditional contract choice of law rule ... questions as to whether a contract has been breached ... are regulated by the law prevailing at the place of performance."). *Cf. Equitable Trust Co. v. Bratwursthaus Manuf. Corp.,* 514 F.2d 565, 567 (4th Cir.1975) ("the law of the place of performance governs questions arising in connection with the performance of a contract"); *accord Occidental Fire & Casualty Ins. Co. v. Bankers & Shippers,* 564 F.Supp. 1501, 1503 (E.D.Va.1983); *Norman v. Baldwin,* 152 Va. 800, 148 S.E. 831 (1929); *Arkla Lumber & Mfg. Co. v. West Va. Timber Co.,* 146 Va. 641, 650, 132 S.E. 840, 842 (1926); 4A Michie's Juris., Conflict of Laws § 25, at 98–99.

**6.** *See Rossman v. State Farm Mut. Auto. Ins. Co.,* 832 F.2d 282, 287 (4th Cir.1987) (contract's interpretation governed by the law of the place of making); *Woodson v. Celina Mut. Ins. Co.,* 211 Va. 423, 425, 177 S.E.2d 610, 613 (1970) ("'nature, validity and interpretation of contracts are governed by the law of the place where made, unless the contrary appears to be the express intention of the parties'") [quoting *C.I.T. Corp. v. Guy,* 170 Va. 16, 22, 195 S.E. 659, 661 (1938)]. *Accord Van Dyke v. Commonwealth,* 178 Va. 418, 421, 17 S.E.2d 366, 368 (1941); 4A Michie's Jurisprudence, Conflict of Laws § 24, at 97 (1983).

**7.** 4A Michie's Jurisprudence, Conflict of Laws § 20, at 92. *See also KECO Indus., Inc. v. ACF Indus., Inc.,* 316 F.2d 513, 514 (4th Cir.1963) ("[T]he place of contracting is the place where the last act necessary to complete the contract and give it validity was performed...."). *Accord Wellmore Coal Corp. v. Gates Learjet Corp.,* 475 F.Supp. 1140 (W.D.Va.1979); *Brand Distributors, Inc. v. Insurance Co. of North America,* 400 F.Supp. 1085, 1089 (E.D.Va.1974), *rev'd on other grounds,* 532 F.2d 352 (4th Cir.1976). *Cf. Christian v. Bullock,* 215 Va. 98, 101, 205 S.E.2d 635, 638 (1974) (construction of contract governed by law of place of signing).

**8.** Given the parties' explicit intention not to be bound by the Agreement until its actual delivery to plaintiff, this Court should not infer a contrary intention absent evidence of fraud or misrepresentation tainting the Agreement. *Cf. Hancock v. Smith,* 90 F.Supp. 45, 49 (W.D.Va.1950) (Where "[d]elivery was essential to the binding effect of this proposed contract" and no delivery occurred, the contract was not binding.).

**9.** Even if Wisconsin law governed the Agreement, the statutory protections plaintiff seeks to invoke are, in fact, unavailable. The Wisconsin Fair Dealership Law, Wis.Stat. ch. 135, ("WFDL" or "Act"), would not be applicable to plaintiff in Maryland or Virginia. By its terms, that Act protects only those dealers who are located in Wisconsin. Wis.Stat. § 135.02(2). *See Bimel–Walroth Co. v. Raytheon Co.,* 796 F.2d 840, 842–43 (6th Cir.1986) (1977 amendment to WFDL explicitly limited its scope to dealerships located in Wisconsin). Cases to the contrary, cited by plaintiff, are inapposite; they were decided before enactment of the statutory amendment limiting the application of the Act to Wisconsin dealers. *See, e.g., Boatland, Inc. v. Brunswick Corp.,* 558 F.2d 818, 822 (6th Cir.1977) (WFDL may apply to out-of-state dealers where contractual choice of law provision specified Wisconsin

the Agreement occurred in Maryland, Virginia, and Delaware. Questions of breach, therefore, would be governed by the laws of those states.[10]

The threshold question then is whether plaintiff's claim raises a question of validity or one of breach. If the claim is for breach, then Virginia law may arguably apply to the Virginia dealership branch. If, instead, the claim is one of validity or interpretation, Maryland law governs. Given these principles, it is important to focus sharply on plaintiff's claim. In essence, plaintiff's claim raises two related questions: (1) whether the termination-at-will clause of the Agreement is valid, and (2) whether defendant, in fact, purported to terminate under the contract's at-will provision or, as plaintiff asserts, under the so-called "for cause" contractual provision.[11]

The first question challenges the validity of a contract provision and is, therefore, governed by the law of the place of making. Because the second question requires the interpretation of contract provisions, its resolution is similarly governed by the law of the place of making. Virginia choice of law rules, therefore, dictate that Maryland law governs the questions presented.

## B. Termination Without Cause

■ Under Maryland law, a supplier who terminates a heavy equipment dealership agreement must provide the dealer at least six months notice of the termination. *See* Equipment Dealer Contract Act, Md. Com.Law Code Ann. § 19–301 (1987) ("Act"). That notice must be in writing, delivered by certified mail or in person, *id.*

---

law as governing the contract.); *C.A. May Marine Supply Company v. Brunswick Corp.,* 557 F.2d 1163 (5th Cir.1977) (same). Indeed, these decisions likely provoked the amendment. *See Bimel–Walroth Co.,* 796 F.2d at 842–43. Absent the protections of the WFDL, defendant claims that Wisconsin common law permits termination at will. The Court's finding that Wisconsin law is inapplicable to the Agreement makes it unnecessary to decide this issue.

**10.** Plaintiff and the Commonwealth cite *Nickels v. People's Banking, Loan & Saving Ass'n,* 93 Va. 380, 387–88, 25 S.E. 8, 11 (1896), and *Poole v. Perkins,* 126 Va. 331, 334, 101 S.E. 240, 241 (1919), as requiring that Virginia law govern the interpretation of the Agreement with respect to plaintiff's Virginia branch. This argument is unpersuasive. In the first place, *Nickels* and *Poole,* are no longer valid to the extent they contradict well-settled Virginia choice of law rules. *See, supra,* nn. 4–5. Support for this conclusion may be drawn from the infrequency with which *Nickels* and *Poole* have been relied on for the choice of law proposition advocated by plaintiff. Only twice in the last sixty years have these decisions been cited in Virginia for this proposition, once only in dicta. *See Heavner v. State Auto. Mut. Ins. Co. of Columbus, Ohio,* 350 F.Supp. 859 (W.D.Va.1972) (district court, citing the strong public policy of Georgia, applied Georgia law to a Maryland automobile insurance contract which covered a Maryland citizen living in Georgia who was involved in a Virginia accident); *In re Lincoln Indus., Inc., Bankrupt.,* 166 F.Supp. 240, 243 (W.D.Va.1958) (Even absent parties' agreement that Ohio law governed construction of sales agreement, the district court noted in dicta that Ohio law would govern dispute involving Ohio's Uniform Sales Act.). Moreover, even assuming some continuing vitality for plaintiff's choice of law rule, it is

inapposite here. *Nickels* and *Poole* apply only "when the contract is to be performed in a place *other than the solace where it is made....*" *New England Oil Corp. v. Island Oil Marketing Corp.,* 288 F. 961, 967 (4th Cir.), *cert. denied,* 263 U.S. 702, 44 S.Ct. 7, 68 L.Ed. 514 (1923). The *Nickels* and *Poole* rule apparently addressed a case where the contract was signed in one state and wholly performed in another. By contrast, the Agreement here was made in Maryland and performed in Maryland, as well as in Virginia and Delaware. The rule, therefore, is not directly applicable to this case.

Finally, application of *Nickels* and *Poole* to the instant case would, in effect, create three different contracts out of one Agreement: Maryland contract law would govern the interpretation of the Agreement for the Maryland branch, Virginia law would similarly govern with respect to the Virginia branch, and Delaware law would govern its application to the Delaware branch. Resorting to the laws of three states to interpret a single agreement or to determine its validity is a result that should obtain only if the parties' intention for this to occur is clearly expressed. No such clear expression of intent appears here.

**11.** Paragraph 10(A) of the Agreement provided, in pertinent part, that

[t]his agreement may be terminated at any time for any reason upon thirty (30) days written notice by Dealer to Company, or upon ninety (90) days written notice by Company to Dealer or as mutually agreed upon in writing by both parties....

Alternatively, the Agreement authorizes defendant to terminate the agreement immediately after notifying the dealer of the occurrence of specified events or actions which demonstrate cause for termination. *See* Agreement, ¶ 10(B).

§ 19–305(a), and include "(1) [a] statement of intention to terminate the contract; (2) [a] statement of the reasons for the termination; and (3) [t]he date on which the termination takes effect." *Id.* § 19–305(b).[12] Plaintiff argues that, by requiring the supplier to state the reasons for termination, the Act implicitly demands that the proffered reasons meet some standard of reasonableness. Defendant counters that such an implication is not warranted by the language or purpose of the Act. This is a matter of first impression; no Maryland court has definitively decided this question.

The statutory interpretation path in Maryland is well-marked. Maryland's well-settled principles of statutory construction command the Court to strive to "ascertain and carry out the legislative intent." *G. Heileman Brewing Co., Inc. v. The Stroh Brewery Co.,* 308 Md. 746, 753, 521 A.2d 1225, 1229 (1987). *See also Mayor of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984). The starting point in the quest for legislative intent is to examine the statutory language.[13] That language must be interpreted in accordance with its ordinary meaning in the context in which it appears.[14] Here, the Act explicitly requires only that a "statement of the reasons for the termination" be included in the notice of termination. Md. Com.Law Code Ann. § 19–305(b). Nothing in the language of the Act itself suggests that the supplier's reasons be "reasonable" or satisfy some standard of "good cause." Significantly, no statutory standard is given by which to measure the acceptability of any reason. Presumably acceptable reasons might include the desire to replace a barely satisfactory dealer with a more vigorous, more promising one or a desire to replace a multiple supplier dealer with one who will focus solely on that supplier's line. If these reasons are not acceptable, then it must be asked what standard strikes them down. The answer must be that the court must not only imply from the silent statute a requirement that termination be based on a reason, but it must also devise a standard for acceptable reasons. At this point, the court's effort impermissibly crosses the line from statutory interpretation to drafting. Simply put, the Maryland Act does not, by its terms, require "good cause" for the termination of heavy equipment dealer agreements. There is no warrant for interpreting it otherwise.[15]

Legislative history also supports this conclusion. The Maryland General Assembly's Committee Reports on the Act confirm that its primary focus was to ensure that heavy equipment dealers could resell their inventories to their suppliers in the event of termination.[16] With that statutory assurance of guaranteed resale, Maryland dealers would then be encouraged to maintain adequate inventories of equipment and parts for farm and outdoor power equipment "essential to the State economy." [17] No mention is made in the various committee reports or analyses of any limitation on the supplier's or dealers's right to terminate the dealership agreement with

**12.** This Act, commonly referred to as a "buy-back" statute, also requires the manufacturer to repurchase the dealer's inventory upon termination. Md.Com.Law Code Ann. §§ 19–201 & 19–202 (1987). As the legislative history reveals, the buy-back provisions were the primary purpose of the Act. *See* S. 386, Summary of Committee Report, Gen'l Assembly of Md., 1987 Sess., 2 (1987).

**13.** *Newman v. Subsequent Injury Fund,* 311 Md. 721, 723, 537 A.2d 274, 275 (1988); *Boulden v. Mayor and Comm'rs of Elkton,* 311 Md. 411, 413, 535 A.2d 477, 479 (1988); *G. Heileman Brewing Co., Inc.,* 308 Md. at 753, 521 A.2d at 1229; *Board of Examiners in Optometry v. Spitz,* 300 Md. 466, 474, 479 A.2d 363, 367 (1984).

**14.** *Newman,* 311 Md. at 723, 537 A.2d at 275; *Boulden,* 311 Md. at 413, 535 A.2d at 479; *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987).

**15.** Absent any ambiguity, the Court is bound by the plain meaning of the statute. *Comptroller v. Fairchild Indus., Inc.,* 303 Md. 280, 284, 493 A.2d 341, 343 (1985); *G. Heileman Brewing Co.,* 308 Md. at 755–56, 521 A.2d at 1230.

**16.** *See* S. 386, Summary of Committee Report, Gen'l Assembly of Md., 1987 Sess., 2 (1987); H.B. 639, Summary of Committee Report, Senate Judicial Proceedings Committee, Gen'l Assembly of Md., 1987 Sess., 2 (1987).

**17.** S. 386, at 2; H.B. 639, at 2.

proper notice.[18] Such silence is not insignificant; a limitation on termination rights is too important a subject to go unremarked. More explicit is the testimony of representatives of several trade associations representing Maryland farm, industrial and outdoor power equipment dealers before the House of Delegates Committee considering the proposed Act. One representative testified that the Act will not "affect the basis on which decisions are made to initiate or terminate agreements."[19] Another representative was even more direct: the Act "does *not* address the issue of 'just cause for termination'...."[20]

Finally, a comparison of the Act with other Maryland dealership laws lends further support to the plain meaning interpretation of the Act. The Maryland Beer Franchise Fair Dealing Act, for example, *also requires that notice of termination of a beer franchise include a statement of reasons for the termination.* Md.Ann.Code, Art. 2B, § 203D (1987). Significantly, however, that law also explicitly prohibits termination by a beer manufacturer of a franchise without "good cause." Md.Ann.Code, Art. 2B, § 203C (1987).[21] Automobile dealers in Maryland are similarly protected. Section 15–209(a)(1) of the Transportation Code allows termination of a automobile franchisee by a manufacturer only when "the dealer has failed to comply substan-tially with the reasonable requirements of the franchise." Md.Transp.Code Ann. §§ 15–209(a)(1) (1987). The absence of similar prohibitive language in the Equipment Dealer Contract Act strongly suggests that the legislature did not, through the Act, impose a requirement of "just cause" for dealership terminations. Had it intended to do so, the legislature surely would have expressly provided such a requirement, as it did for automobile dealers and beer franchisees.

Here, defendant satisfied the plain language statutory requirements for termination. It provided plaintiff six months written notice of the termination and delivered that notice by certified mail. Moreover, the notice of termination also stated the reasons for termination and the date on which termination would be effective. Md. Com.Code Ann. §§ 19–305(a), 19–305(b). Defendant's termination of the Agreement with plaintiff is, therefore, permissible and legally unassailable.

■ Plaintiff urges that the same result does not necessarily follow with respect to the Virginia branch. Even if Maryland law would otherwise apply, the Court may choose not to enforce Maryland law against the Virginia branch if that law is "contrary to the morals, public policy, or the positive law" of Virginia.[22] This is a public policy

**18.** *See* H.B. 639, Bill Analysis, House of Delegates Comm. on Econ. Matters, Gen'l Assembly of Md., 1987 Sess. (1987); H.B. 639, Floor Report, House of Delegates Comm. on Econ. Matters, Gen'l Assembly of Md. (1987); S. 386, Floor Report, House of Delegates Comm. on Econ. Matters, Gen'l Assembly of Md. (1987); S. 386, Bill Analysis, Senate Judicial Proceedings Comm., Gen'l Assembly of Md., 1987 Sess., 5 (1987).

**19.** Hearing on H.B. 639, Equipment Dealer Contract Act, before the House of Delegates Comm. on Econ. Matters, Gen'l Assembly of Md., 1987 Sess., 2 (March 10, 1987) (statement of Will Stevenson, Ch., Legis. Comm., Mar–Del–Va Farm & Power Equipment Assoc.).

**20.** Hearing on H.B. 639, Equipment Dealer Contract Act, before the House of Delegates Comm. on Econ. Matters, Gen'l Assembly of Md., 1987 Sess., 2 (March 10, 1987) (statement of John Shaw, Exec. V.P., Mar–Del–Va Farm & Power Equipment Assoc.) (emphasis in original). This testimony is especially pertinent given the fact that the Act was apparently drafted by the legislative committees of several of these trade associations.

**21.** Like the Virginia Heavy Equipment Dealer Act, Va.Code Ann., §§ 59.1–353 *et seq.,* (Supp. 1988), the Maryland Beer Franchise Fair Dealing Act also affords dealers the opportunity to "cure" the problems cited by suppliers or manufacturers as the reasons for termination. *Compare* Md.Com.Code Art. 2B, § 203D (1987) *with* Va.Code Ann. § 59.1–355(B) (Supp.1988). This feature, like the termination for cause requirement, is also missing from the Maryland Act.

**22.** *Resorts International Hotel, Inc. v. Agresta,* 569 F.Supp. 24, 26 (E.D.Va.1983), *aff'd without opinion,* 725 F.2d 676 (4th Cir.1984) [citing *Parker v. Moore,* 115 F. 799 (4th Cir.1902) ] (refusing to enforce New Jersey gambling debt against Virginia citizen: "this Court cannot ... contravene the positive law of the Commonwealth of Virginia in a diversity case and enforce a contract that offends two centuries of

exception to the traditional rule of comity.[23] Under the exception, "[c]omity is not given effect when to do so would prejudice a state's own rights or the rights of its citizens."[24] Merely because one state's law differs from Virginia's does not, *ipso facto*, justify refusal to adhere to comity principles.[25] Denial of comity is generally limited to "something immoral [or] shocking to one's sense of right." *Tate v. Hain*, 181 Va. 402, 411, 25 S.E.2d 321, 325 (1943). Were this not the case, choice of law rules would rarely operate. A lesser standard would convert the exception to the rule. It is precisely because one state's rules may differ from another's that choice of law rules are necessary as a matter of comity among the states. For this reason, the public policy exception should operate only in compelling circumstances.

The question then is whether application of Maryland law to the Agreement is so contrary to Virginia's fundamental public policy as to fall within the narrow scope of the exception. Virginia's public policy finds expression in the Virginia Heavy Equipment Dealers Act, Va.Code Ann., §§ 59.1–353 *et seq.* (Supp.1988). Under the Virginia Act, protections against termination for Virginia heavy equipment dealers are substantially stronger than those available for their Maryland counterparts. Enacted in 1988, the Virginia Act only allows termination of such agreements for good cause and with proper notice. Va. Code Ann., § 59.1–355. Moreover, the Act's provisions explicitly "supersede and control all other provisions of the agreement inconsistent herewith." Va.Code Ann., § 59.1–360. In sum, Virginia undeniably has a clear and strong policy against termination of heavy equipment dealers without good cause. But this fact is neither determinative nor persuasive. Maryland, too, like its sister state, has carefully considered the problems faced by heavy equipment dealers. As a result of that consideration, protective measures were enacted to address those problems. The Maryland legislature simply chose not provide the same level of protection as the Virginia General Assembly. On balance, the Court is simply not persuaded that application of Maryland law to the Virginia outlet would

State policy."). *See also Doulgeris v. Bambacus*, 203 Va. 670, 127 S.E.2d 145 (1962) (refusing to enforce adoption proceedings under Greek law as contrary to Virginia public policy); *Toler v. Oakwood Smokeless Coal Corp.*, 173 Va. 425, 4 S.E.2d 364 (1939) (refusing to recognize marriage that is bigamous in Virginia even if valid elsewhere); 4A Michie's Juris., Conflict of Laws § 5, at 57 ("[W]here a foreign contract is repugnant to good morals or where its enforcement would lead to disturbance and disorganization of the local municipal law, the courts will refuse to enforce it, as contrary to the public policy of the state of the forum.").

**23.** There is no constitutional barrier to a forum applying its own law to a transaction so long as that forum has some contacts with the transaction. *Carroll v. Lanza*, 349 U.S. 408, 412–14, 75 S.Ct. 804, 806–07, 99 L.Ed. 1183 (1955).

**24.** *McFarland v. McFarland*, 179 Va. 418, 430, 19 S.E.2d 77, 83 (1942) (refusing to recognize or enforce North Carolina divorce decree that would not be valid under Virginia law); *also cited in* 4A Michie's Juris., Conflict of Laws § 5, at 57. The *McFarland* court further noted that [c]omity is not a matter of obligation. It is a matter of favor or courtesy, based on justice and good will. It is permitted 'from mutual interest and convenience, from a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return.' *McFarland*, 179 Va. at 430, 19 S.E.2d at 83 [quoting 11 Am.Jur., Conflict of Laws, § 5]. *Compare, e.g., Heavner v. State Auto. Mut. Ins. Co. of Columbus, Ohio*, 350 F.Supp. 859 (E.D.Va. 1972) (applying Georgia uninsured motorists statute to insurance contract made in Maryland and partly performed in Georgia because of strong Georgia public policy protecting Georgia motorists) *and Isaac Fass, Inc. v. Pink*, 178 Va. 357, 361–64, 17 S.E.2d 379, 381–82 (1941) (forum state may refuse to enforce contract if its terms are "obnoxious" to the state's laws; accordingly, refused to enforce insurance contract that provided for "performance by the insurance company of acts within this State which our laws expressly forbid it to perform") *with Willard v. The Aetna Casualty & Surety Co.*, 213 Va. 481, 483, 193 S.E.2d 776, 778–79 (1973) ("The public policy of this state in this regard is not so compelling as to override the application of the North Carolina direct action provision.")

**25.** *See Tate v. Hain*, 181 Va. at 411, 25 S.E.2d at 325 ("It would indeed be a hard rule if the law of the forum set at naught the provisions of an agreement, valid where made or to be performed, simply because the rights of the beneficiary of it were drawn into question in its jurisdiction and local policy were different from that of the place of making or performance.")

be "immoral [or] shocking to one's sense of right." *Tate,* 181 Va. at 411, 25 S.E.2d at 325. This Court declines, therefore, to invoke the public policy exception and apply Virginia law to plaintiff's Virginia outlet. Under Virginia's choice of law rules, therefore, Maryland law governs plaintiff's claims.[26]

### C. Termination With Cause

■ In the alternative, plaintiff contends that defendant, by setting forth its reasons for termination in the termination notice, invoked the "for cause" provision of the Agreement. Specifically, defendant notified plaintiff that the termination was due to plaintiff's "failure ... to meet during 1987 the minimum required unit objectives for three of the five J.I. Case Company product categories to which those required objectives were ultimately applied." Plaintiff asserts that defendant was invoking its right, under Paragraph 10(B)(8) of the Agreement, to terminate immediately for plaintiff's "failure to perform ... any provision of this Agreement."[27] If so, then defendant must demonstrate that plaintiff's allegedly inadequate performance constituted a failure to perform a specific provision of the Agreement. The Court rejects plaintiff's argument as contradicted by the evidence. The contract clause requiring cause permits immediate termination. Agreement, ¶ 10(B). The clause permitting termination without cause requires ninety days written notice. Agreement, ¶ 10(A).[28] Defendant deliberately chose the latter, thereby making clear its intention to exercise its right to terminate

without cause. Also significant is that defendant's proffered reason for termination did not refer to the failure of plaintiff to perform any specific provision of the Agreement. Defendant, therefore, clearly sought termination under the at-will provisions of the Agreement.

### Conclusion

Because Maryland law governs the Agreement in dispute and defendant complied with the requirements of that state's law, as well as with the terms of the Agreement, summary judgment is granted for defendant. Accordingly, plaintiff's motions for preliminary and permanent injunctions are denied. An appropriate Order shall be entered.

---

**26.** A different result might obtain if the Virginia branch were a separate dealership, incorporated in Virginia, and had signed a separate contract containing a choice of law provision that adopted Maryland law. In that case, the parties' choice might not be honored if a court found no reasonable basis for the choice or found that the Virginia dealership was misled or defrauded into agreeing to the provision. *Cf. Wellmore Coal Corp. v. Gates Learjet Corp.,* 475 F.Supp. 1140, 1144 & n. 3 (W.D.Va.1979) (parties' contractual choice of law provision enforced unless no reasonable basis for their choice or fraud was committed against one party to ensure agreement to the provision); *Tate v. Hain,* 181 Va. 402, 409, 25 S.E.2d 321, 324 (1943) (parties'

contractual choice of law enforced absent evidence of unconscionability).

**27.** Immediate termination is also authorized, for example, if the dealer does not promptly pay its debts, loses its business license, makes a false statement to defendant, or changes ownership or sells its assets such that the ability of the dealer to comply with the Agreement is affected. (Agreement, ¶ 10(B)).

**28.** Maryland law, however, supercedes that clause of the Agreement and requires six months written notice. Md.Com.Law Code Ann. § 19–301 (1987). Defendant complied with that clause, as modified by Maryland law.