**WESTERN BRANCH HOLDING COMPANY, t/a Nitrex,**
Plaintiff,

v.

**TRANS MARKETING HOUSTON, INC., Defendant.**

**Civ. A. No. 89–9–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

July 21, 1989.

Robert J. Haddad, Lisa A. Bertini, Douglas E. Kahle, Shuttleworth, Ruloff, Giordano & Kahle, Virginia Beach, Va., for plaintiff.

Benjamin V. Madison, III, Hunton & Williams, Norfolk, Va., David G. Wilson, Andrews & Kurth, Washington, D.C., William W. Rucker, Houston, Tex., for defendant.

**OPINION AND ORDER**

DOUMAR, District Judge.

The plaintiff, Western Branch Holding Company trading as Nitrex (seller), a Virginia corporation, brought suit for $146,-756.30 against Trans Marketing Houston, Inc. (buyer), a Texas corporation, the defendant (hereinafter designated as Houston), for alleged breach of a contract allegedly modified, of what was initially entitled a "product purchase agreement," confirmed in writing between the plaintiff and the defendant for the purchase by the defendant and the sale by the plaintiff of 50,000 short tons of "Prilled Urea" over a twelve-month period. The defendant denied any such breach, pleaded an accord and satisfaction, and in the alternative, filed a counterclaim for breach of contract. The defendant has filed a motion for summary judgment which has been fully briefed and argued. For the reasons presented below, this motion is GRANTED and judgment is

entered for the defendant, Trans Marketing Houston, Inc.

The primary question involved is whether the acceptance and negotiation of a check dated December 13, 1988 in the amount of $1,033,204.26 tendered from the defendant to the plaintiff as payment in full of all sums claimed by virtue of the contract was an accord and satisfaction despite the protest and reservation of rights with which Nitrex endorsed the check. This entails a conflict of laws determination. It appears that pursuant to the terms of the contract, it was to be governed under the laws of the state of Texas, even though the contract may have been made in Virginia. The place of performance of the contract was Tennessee as to the delivery of the product and Texas as to the delivery of certification documents. The check was negotiated in Illinois, although the acceptance of the check occurred in Virginia. The plaintiff claims that under Virginia law there would be no accord and satisfaction by acceptance of the check, that summary judgment should be denied, and that the contested breach of contract claims should be tried.

I

FACTS

The written confirmation of the contract was drafted and executed in Texas by the buyer on May 4, 1988 and executed on May 11, 1988 by the seller in Virginia. The seller agreed to deliver 50,000 short tons of urea at the rate of approximately 4,200 short tons per month F.O.B. to the buyer's barges at Memphis, Tennessee, beginning on or about May 2, 1988. The terms and conditions of the contract provided, among other terms, as follows:

"11. *Governing Law.* This agreement shall be construed in accordance with and governed by the laws of the State of Texas."

Payment was to be made 30 days from invoice date upon receipt by the buyer from the seller of the following documents:

1. Commercial invoice;

2. Manufacturer's certificate of analysis; and

3. Independent barge draft survey.

The last act of performance by the seller was the delivery of the certification documents and invoices in Texas.

In August of 1988, the seller proposed to buy its way out of the contract. On August 25, 1988, the seller requested the buyer to respond to its buy-out offer. By letter dated August 30, 1988, the seller made another proposal to the buyer for a buy-out. By letter dated September 14, 1988, the buyer offered a counter-proposal. By a memo dated September 29, 1988, the seller presented different payment terms on a buy-out proposal. By telex dated October 3, 1988, the buyer rejected the payment terms.

By letter dated December 13, 1988, the buyer sent a final settlement letter and a check for $1,033,204.26 with a restrictive endorsement. The letter indicates that the amount of $1,033,204.26 was "submitted in full and final settlement of our contract and your invoices: 6807, 6809, 6904, 7008, 7118, 7131 and 7590" and shows how the payment figure was ascertained. The check had noted on the front the words "restrictive endorsement applied." On the back, the following endorsement was typed and stated:

By its acceptance and negotiation of this draft, Nitrex accepts this instrument as payment in full from Trans Marketing Houston, Inc., of all sums owing to Nitrex under the terms of one certain Urea Product Purchase Agreement, TMGP–2179/88, between Trans Marketing Houston, Inc. and Nitrex on or about May 4, 1988, and Nitrex does further release Trans Marketing Houston, Inc. from any other and further liability with respect to said Urea Product Purchase Agreement TMGP–2179/88.

The check and letter was sent by the buyer in Texas to the seller in Virginia. The seller delivered the check to its bank in Illinois with the restrictive endorsement crossed through and adding the following statement below the restrictive endorsement:

Nitrex has cashed this check under protest and without prejudice to its future

rights for full payment and with reservation of all its rights to be paid in full. Virginia, Texas and Georgia have all adopted Section 1–207 of the Uniform Commercial Code and as such Nitrex's protest operates as a reservation of all its rights under the Urea Product Purchase Agreement between Trans Marketing Houston, Inc. and Nitrex dated on or about May 4, 1988.

On December 16, 1988, Nitrex, the seller, delivered the check so endorsed to the First National Bank of Chicago, Illinois, for deposit into Nitrex's account.

Nitrex then sent, by its attorneys, a letter dated December 23, 1988 to the buyer informing the buyer that Nitrex, the seller, had cashed the check, and that Nitrex considered the restrictive endorsement to be without effect. The letter indicated that the seller would notify the buyer of the amount the seller claimed was still owed and on January 6, 1989, Nitrex, the seller, filed this suit for $146,756.30. Nitrex also seeks interest, costs and attorney's fees.

## II

The basis of the defendant's motion for summary judgment is that Nitrex's acceptance of the check and its subsequent negotiation constituted an accord and satisfaction of a disputed sum under the applicable state law. There is no issue that the sum due or to be due was disputed.

In an action arising under the Court's diversity jurisdiction, the Court must apply the choice of law rules of the state where the Court sits. *Equitable Trust Co. v. Bratwursthaus Management Corp.*, 514 F.2d 565, 576 (4th Cir.1975). Absent an agreement to the contrary, Virginia conflicts of law rule indicate that the nature, validity and interpretation of a contract is the law of the place where the contract is made. *Chesapeake Supply and Equip. Co. v. J.I. Case Co.*, 700 F.Supp. 1415, 1416 (E.D.Va.1988); *Brand Distrib., Inc. v. Insurance Co. of N. Am.*, 400 F.Supp. 1085, 1088 (E.D.Va.1974), *reversed on other grounds*, 532 F.2d 352 (1976). In most instances, Virginia would view an accord and satisfaction as a contract separate and distinct from the underlying agreement. *See In re Koushel*, 6 B.R. 315 (Bankr.E.D.Va.1980); *Wright v. Orlowski*, 218 Va. 115, 235 S.E.2d 349 (1977); *Owen v. Wade*, 185 Va. 118, 37 S.E.2d 759 (1946). This Court, however, does not find that it is necessary in this situation to determine whether Virginia would view the circumstances surrounding the alleged accord and satisfaction in this case as a separate and distinct contract, but will proceed to discuss the case as if it were a separate and distinct contract.

In Virginia, the nature, validity and interpretation of a contract is the place where the contract is made. *Chesapeake Supply and Equip. Co.*, 700 F.Supp. at 1416–17; *Wellmore Coal Corp. v. Gates Learjet Corp.*, 475 F.Supp. 1140, 1143 (W.D.Va. 1979); *Brand Distrib., Inc.*, 400 F.Supp. at 1088; *Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 426, 177 S.E.2d 610, 613 (1970). Unless otherwise provided in the contract or by statute, a contract is made at the place where the contract is executed; the contract is executed where acceptance occurs; and acceptance occurs where the last act is done which is necessary to make it binding. *See Equitable Life Assurance Society v. Clements*, 140 U.S. 226, 231, 11 S.Ct. 822, 824, 35 L.Ed. 497 (1891); *Hogue–Kellogg Co. v. G.L. Webster Canning Co.*, 22 F.2d 384, 385 (4th Cir.1927), *cert. denied*, 277 U.S. 592, 48 S.Ct. 529, 72 L.Ed. 1004 (1928); *Chesapeake Supply and Equip. Co.*, 700 F.Supp. at 1416–17; *Wellmore Coal Corp.*, 475 F.Supp. at 1144. Thus it has been stated that "under Virginia's conflict of law rules, the place of contracting ... is the place where the last act necessary for a binding contract took place." *Brand Distrib., Inc.*, 400 F.Supp. at 1089.

The last act necessary to make the accord and satisfaction binding, assuming that the accord and satisfaction is a separate contract, was therefore the negotiation of the check by the seller, Nitrex. Negotiation is the necessary last act because of the expressed language contained in Nitrex's restrictive endorsement which provided:

"By its acceptance and negotiation of this draft, Nitrex accepts this instrument as payment in full from Trans Marketing ..."

This language requires not only that the seller accept the check, which the seller did in Virginia, but also that the check be negotiated. The check was negotiated in Illinois, as negotiation is defined by Virginia law as follows:

Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order, it is negotiated by delivery with any necessary endorsement....

Va.Code Ann. §§ 8.3–102(2); 8.3–202(1) (1965). Delivery is defined by Virginia law as follows:

"Delivery" with respect to instruments ... means voluntary transfer of possession.

Va.Code Ann. § 8.1–201(14) (Supp.1988). The buyer argues and the Court finds that the delivery of the check occurred when Nitrex's bank in Illinois received the check and deposited it in Nitrex's account. That is when the transferee bank became the holder.

■ The negotiation of the check in Chicago, Illinois, requires the substantive law of Illinois to be applied to the issue of whether there was a valid accord and satisfaction. Illinois law has held that under these circumstances there was a valid accord and satisfaction. Under Illinois law:

Where there is a bona fide dispute as to the amount due, it makes no difference that the creditor protests or states that he does not accept the amount proffered in full satisfaction. The creditor must either accept what is offered with the condition on it or refuse it. A creditor has no right to cash the check and thereby obtain the benefit of such offer without its accompanying burden of compromise.

*Quaintance Assocs., Inc. v. PLM, Inc.*, 95 Ill.App.3d 818, 819, 51 Ill.Dec. 153, 156, 420 N.E.2d 567, 570 (1981) (citations omitted from quoted text). Under Illinois law, Nitrex's negotiation of Trans Marketing's restrictively endorsed check with knowledge

that it was tendered in full settlement would have operated as an acceptance of a proposed settlement of the dispute, regardless of any statement of protest added to that check by the seller, Nitrex.

A question arises over the effect of the Uniform Commercial Code. Section 1–207 of the Uniform Commercial Code is part of the Illinois law with its codification at Ill. Ann.Stat. ch. 26, para. 1–207 (Smith–Hurd 1988), which provides:

A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest" or the like are sufficient.

The common law held that, under the facts presented in this case, a statement of protest such as Nitrex's does not negate the binding settlement. Illinois would probably follow this common law rule. In *Nelson v. Fire Ins. Exch.*, 156 Ill.App.3d 1017, 109 Ill.Dec. 516, 519, 510 N.E.2d 137, 140, *cert. denied*, 116 Ill.2d 562, 113 Ill.Dec. 303, 515 N.E.2d 112 (1987), the Court stated that Illinois had not previously considered the issue of whether the UCC section modifies the common law doctrine of accord and satisfaction in the setting of a full payment check and stated that: "the majority of jurisdictions which have considered the issue has declined to apply section 1–207." *Id.* 109 Ill.Dec. at 519, at 510 N.E.2d at 140. The analysis by that court of the law listed decisions from nineteen different states that declined to apply § 1–207 to alter the traditional doctrine of accord and satisfaction by the use of the statutory words while indicating that only four jurisdictions still interpreted that section to alter the common law. Illinois follows the principle that in construing uniform statutes, such as the Uniform Commercial Code, the Court should "defer to decision of other states and will construe the statute in accordance with the construction given to the same statute in other jurisdictions." *See Lake Motor Freight, Inc. v. Randy Trucking, Inc.*, 118 Ill.

App.3d 626, 630, 74 Ill.Dec. 192, 196, 455 N.E.2d 222, 226 (1983). Consequently, the Court must find that under Illinois law, which is the substantive law controlling the issue of accord and satisfaction, Nitrex's statement of protest did not prevent Nitrex's negotiation of the check from giving rise to accord and satisfaction. *See A-T-O, Inc. v. Stratton and Co.*, 486 F.Supp. 1323 (N.D.Ga.1980).[1] Therefore, Trans Marketing's motion for summary judgment is GRANTED. The Clerk is DIRECTED to enter judgment for the defendant.

IT IS SO ORDERED.

---

1. The Court has considered Texas law and finds that under Texas law, these circumstances would be an accord and satisfaction. *See Pileco, Inc. v. HCI, Inc.*, 735 S.W.2d 561, 562 (Tex.Ct. App.), *writ of error refused* N.R.E. (1987); *see also Young v. Clear Lake Yacht Basin, Inc.*, 337 F.Supp. 1305, 1317 (S.D.Texas 1972) *aff'd*, 473 F.2d 1389 (5th Cir.1973), *cert. denied*, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 106 (1973). It does appear to the Court that the better rule might be to apply Texas law as this action appears to be between traders where the goods are manufactured or obtained in one area, sold by a trader in another area to a person in another area delivering in another area. The law which the parties themselves agreed upon to interpret the making and the performance of the contract (Texas) should be the law that governs the termination or settlement of the contract. The Court has not gone into any dissertation on this point, but believes that it is by far the most practical result. If Texas law were applied, the results would be the same.