953 F.2d 639
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re Joseph B. SHUMATE, Jr., Debtor.
NCNB FINANCIAL SERVICES, INCORPORATED; NCNB National Bank
of North Carolina; NCNB Corporation, Plaintiffs-Appellees,
v.
Joseph B. SHUMATE, Jr., Defendant-Appellant,
James F. Douthat; Pulaski Furniture Corporation, Defendants-Appellees,
and
John R. Patterson, Trustee; Coleman Furniture Corporation;
Creditors Committee, Defendants.
In re Joseph B. SHUMATE, Jr., Debtor.
NCNB FINANCIAL SERVICES, INCORPORATED; NCNB National Bank
of North Carolina; NCNB Corporation, Plaintiffs-Appellees,
v.
Joseph B. SHUMATE, Jr., Defendant-Appellant,
and
John R. Patterson, Trustee, Defendant.
In re Joseph B. SHUMATE, Jr., Debtor.
NCNB NATIONAL BANK OF NORTH CAROLINA, Plaintiff-Appellant,
and
NCNB Financial Services, Incorporated; NCNB Corporation, Plaintiffs,
v.
Joseph B. SHUMATE, Jr., Defendant-Appellee,
and
John R. Patterson, Trustee, Defendant.
 Nos. 90-2026, 90-2155 and 90-2166.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 1, 1991.
Decided Jan. 15, 1992.
 
 Appeals from the United States District Court for the Western District Virginia, at Roanoke, Nos. CA-83-279-R, CA-86-433-R, CA-83-16-M-R, Glen M. Williams, Senior District Judge.
 Joseph B. Shumate, Jr., appellant pro se.
 Stephen McQuiston Hodges, Penn, Stuart, Eskridge & Jones, Abingdon, Va., Benjamin C. Ackerly, Sr., Hunton & Williams, Richmond, Va., George Verner Hanna, III, Hayden Jerdson Silver, III, Frank Caldwell Patton, III, Moore & Van Allen, Charlotte, N.C., for appellees.
 W.D.Va.
 NOS. 90-2026 AND NO. 90-2155 AFFIRMED, AND NO. 90-2166 VACATED AND REMANDED.
 Before MURNAGHAN, SPROUSE and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In these consolidated cases, Joseph B. Shumate, Jr. appeals orders of the district court denying his motion to void an order refusing to set aside a foreclosure sale and imposing Fed.R.Civ.P. 11 sanctions for the filing of the motion (appeal No. 90-2026), and finding in favor of NCNB Financial Services, NCNB National Bank, and NCNB Corporation (collectively NCNB) on NCNB's claims and on Shumate's counterclaims (appeal 90-2155). NCNB appeals as inadequate the interest and attorney's fees awarded on its judgment (appeal 90-2166). Upon review of the record and briefs, we find Shumate's arguments without merit and affirm in 90-2026 and 90-2155. In 90-2166, we vacate and remand for redetermination of interest and attorney's fees.
 
 
 2
 These appeals arise out of a series of lawsuits brought about by the personal bankruptcy of Shumate and the financial collapse of his wholly-owned corporation, Coleman Furniture (Coleman). At issue here are a claim brought by NCNB against Shumate to recover $200,000 plus interest and attorney's fees on a personal promissory note and a sixteen-count counterclaim filed by Shumate, seeking damages allegedly arising from various NCNB transactions involving Coleman. Shumate also filed a motion under Fed.R.Civ.P. 60(b)(4) challenging an order refusing to set aside a foreclosure sale in a related action. He sought to amend his complaint in this action to relitigate those matters. The district court denied the Rule 60(b) motion, holding that it was frivolous and barred under res judicata; the court also imposed sanctions pursuant to Fed.R.Civ.P. 11 for filing of the motion. Between May 1988 and May 1990, the district court granted summary judgment to NCNB on its claim and dismissed all but one of Shumate's counterclaims. This counterclaim (count two) was tried before a jury, which found in favor of NCNB. The court subsequently denied Shumate's motions for reconsideration, new trial, and to set aside the verdict.
 
 I. 90-2026
 
 3
 In 90-2026, Shumate appeals the district court's orders denying his Rule 60(b)(4) motion which again sought to set aside a foreclosure sale and imposing Rule 11 sanctions.[1]
 
 
 4
 Shumate has already attempted to set aside the foreclosure sale of Coleman's property which is at issue here. In Shumate v. Douthat, No. 84-1519 (4th Cir. July 23, 1984) (unpublished), cert. denied, 469 U.S. 1132 (1985), this Court held that the district court had jurisdiction over the foreclosure sale and that the sale was conducted properly. Therefore, any claims relating to the sale are clearly barred under principles of res judicata. Given the number of times Shumate has filed this claim, the district court was within its discretion in awarding modest sanctions under Rule 11. See Cooter & Gell v. Hartmarx Corp., 58 U.S.L.W. 4763, 4769 (U.S.1990) (An appellate court "should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination.").
 
 II. 90-2155
 
 5
 In 90-2155, Shumate appeals from the district court's final order entering judgment in favor of NCNB and denying Shumate's motions for reconsideration, new trial, and to set aside the verdict. We affirm the district court's judgment in this case, adopting its reasoning, which we summarize here.
 
 
 6
 A. The $200,000 Judgment for NCNB on the Loan to Shumate. Shumate argues on appeal that this loan was a fraudulent conveyance and voidable preference under 11 U.S.C. § 547 (1988). He contends that NCNB loaned him the money, he lent part of the money to Coleman, and Coleman paid the money towards its own indebtedness to NCNB. He thus claims that the purpose of the loan was to enable NCNB to impermissibly improve its position vis-a-vis Coleman. We find no merit to this argument. As Shumate conceded in the district court, the contractual obligation between Shumate and NCNB was separate, apart, and distinct from any obligation of Coleman; the obligation was Shumate's, not Coleman's. Shumate does not contest the indebtedness, and we find no basis for setting aside the summary judgment.
 
 
 7
 B. The Sixteen Counterclaims. We agree with the district court's ruling on each of Shumate's counterclaims. Most of these claims were dismissed by the district court on the grounds of standing because Shumate was asserting Coleman claims in his capacity as either stockholder or guarantor.[2] The district court carefully evaluated applicable Virginia law, and correctly determined that neither stockholders, employees, nor guarantors have standing to assert claims for damages suffered by the corporation. Keepe v. Shell Oil Co., 260 S.E.2d 722 (Va.1979); Mullins v. First Nat'l Exchange Bank, 275 F.Supp. 712 (W.D.Va.1967). We briefly review each claim.
 
 
 8
 1. Count One: Shumate claimed that NCNB's alleged overcharging of interest constituted a RICO violation under 18 U.S.C. § 1962(c) (1988). The district court properly dismissed this claim, finding that Shumate, acting only as guarantor, lacked standing.
 
 
 9
 2. Count Two: Shumate claimed that NCNB charged interest in excess of the rate of interest provided in the loan agreement, thereby committing breach of contract. This claim was tried before a jury which heard testimony from expert witnesses as to the applicable "prime rate" (as defined in the contract) for the period in question, and found for NCNB.
 
 
 10
 Shumate argues that the verdict was not supported by the evidence and that the district court, therefore, erred in denying his motion for a new trial under Fed.R.Civ.P. 59. A district court may interfere with a verdict under Rule 59 "only where the verdict is 'against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice.' " Mattison v. Dallas Carrier Corp., --- F.2d ---, No. 91-3008, slip op. at 18 (4th Cir. Oct. 11, 1991) (quoting Aetna Casualty & Sur. Co. v. Yeatts, 122 F.2d 350, 352 (4th Cir.1941)). An appellate court has "no such discretionary power to award new trials on the basis of [its] notions of the weight of the evidence, and an order overruling a motion for a new trial on that ground is ordinarily not appealable." Fisher v. United States, 318 F.2d 417, 418 (4th Cir.1963). Here, the factual determination of the prime interest rate was for the jury to make on consideration of the testimony presented, and we find without merit Shumate's appellate challenge to the sufficiency of the evidence. We also find without merit Shumate's contentions that he was not given enough time to present his case and that the court confused or misinstructed the jury.
 
 
 11
 3. Count Three: Shumate claimed that the interest overcharge constituted actual and constructive fraud on Coleman and himself as guarantor. He also claimed that NCNB committed fraud in his personal bankruptcy by exaggerating its claims to the bankruptcy court. As to the first part of this claim, the district court correctly ruled that Shumate lacked standing. As to the second part of the claim, the district court correctly held, relying on Shumate v. Signet Bank, No. CA-87-0250-R, slip op. at 1-6 (W.D.Va. Dec. 29, 1987) (in which Shumate brought an identical action against Signet Bank), that submitting an allegedly false claim to the bankruptcy court could not form the basis for an independent action in the district court for fraud upon the court.
 
 
 12
 4. Count Four: Shumate alleged that NCNB Financial Services and NCNB Corporation engaged in "racketeering activity" in that they committed mail fraud, interstate transportation of stolen property, and fraud in connection with Coleman's bankruptcy. Again, Shumate lacks standing to bring this claim and the district court properly dismissed it.
 
 
 13
 5. Count Five: This count alleged that NCNB wrongfully and fraudulently deposited in [NCNB's] deposit account certain checks made payable to Coleman after Coleman had filed its petition in bankruptcy, thereby violating the automatic stay provisions of the bankruptcy code. The district court correctly held that these losses were Coleman's to assert, not Shumate's.
 
 
 14
 6. Count Six: Shumate claimed that NCNB violated the loan agreements and the implied covenants of good faith and fair dealing by refusing to advance additional funds to Coleman prior to bankruptcy. The district court, in two lengthy opinions analyzing fiduciary duties in the lender/borrower relationship, properly determined that NCNB had breached no such duty.
 
 
 15
 7. Count Seven: Shumate claimed that, because NCNB misrepresented its intentions to negotiate with the Coleman Trustee with respect to additional funding, both Coleman and Shumate (as guarantor) were damaged by the loss of opportunity to be rehabilitated or sold as a going concern. Again, the district court correctly found that Shumate lacked standing to assert this claim.
 
 
 16
 8. Count Eight: This count alleged actual and constructive fraud by NCNB in its liquidation of Coleman assets. The district court properly held that any cause of action arising out of the wrongful liquidation of Coleman assets belonged to Coleman, not Shumate.
 
 
 17
 9 and 10. Counts Nine and Ten: These counts were dismissed upon joint motion filed by NCNB and Shumate.
 
 
 18
 11. Count Eleven: Shumate alleged that NCNB interfered with contractual negotiations between himself and another party concerning a new furniture venture. Because Shumate was negotiating on behalf of Coleman, however, the district court correctly found that he lacked standing to bring the claim.
 
 
 19
 12. Count Twelve: Shumate alleged that NCNB committed common law waste with respect to Coleman assets. Again, the district court properly determined that Shumate lacked standing to bring the claim.
 
 
 20
 13. Count Thirteen: This count alleged that NCNB violated Va.Code Ann. § 8.9-207 (Michie 1965)[3] by failing to exercise reasonable care in the custody and preservation of Coleman collateral in its possession. The district court properly awarded summary judgment to NCNB on this claim because Shumate lacked standing.
 
 
 21
 14. Count Fourteen: Shumate claimed that NCNB and one of its directors conspired to wilfully and maliciously injure him and Coleman in their trade or business in violation of Va.Code Ann. § 18.2-499 (Michie 1988). The district court examined the evidence submitted by Shumate as proof of this conspiracy (memos of comments made by one of the directors about Coleman's poor financial position and notes written by the Coleman Trustee concerning rumors about this same director using his position to drive Coleman out of business), and correctly determined that Shumate failed to meet his burden of proof to survive a motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).
 
 
 22
 15. Count Fifteen: This count alleged that NCNB committed fraudulent and inequitable conduct requiring the equitable subordination of its claims to those of Coleman's general unsecured creditors and those of Shumate. Shumate should have brought this claim in the Coleman bankruptcy action if he wished to pursue it. We find no basis for his asserting it here as an independent counterclaim.
 
 
 23
 16. Count Sixteen: Shumate alleged that NCNB, through its employee, slandered him, and that NCNB and this same employee conspired to maliciously injure him in his trade or business in violation of Va.Code Ann. § 18.2-499 and 500 (Michie 1988).
 
 
 24
 In support of his slander claim, Shumate alleged that this employee told third parties that he would economically ruin Shumate and that the employee "took personal affront" to Shumate. The district court correctly found that these remarks did not constitute actionable slander. The plaintiff in a defamation action must prove that the publication was false. Gazette, Inc. v. Harris, 325 S.E.2d 713, 724-25 (Va.), cert. denied, 472 U.S. 1032, and 473 U.S. 905 (1985). As statements of intent, the threats to ruin Shumate were neither true nor false. Nor is the act of "taking personal affront" legally reprehensible.
 
 
 25
 Shumate also alleged a conspiracy to injure him in his trade or business; specifically, to financially destroy him. As evidence, he pointed to the same comments which formed the basis for his slander claim. In response to NCNB's motion for summary judgment, Shumate claimed that his mere assertion that a bank employee conspired with NCNB Financial Services established a material factual dispute preventing summary judgment. We agree with the district court that this conclusory response was insufficient to survive a motion for summary judgment.
 
 
 26
 17. Paragraph 69 Claim: In addition to the sixteen enumerated claims, Shumate asserted in paragraph 69 of his counterclaim that NCNB subjected him to personal tax liability by causing Coleman not to pay withholding taxes. We agree with the district court that Shumate failed to establish causation on this claim.
 
 III. 90-2166
 
 27
 In 90-2166, NCNB appeals that portion of the district court's final order which awards interest on its judgment on the promissory note at the contract rate of twelve percent per annum from February 1, 1983 through June 1, 1984 (the date Shumate filed for bankruptcy), and at the federal judgment rate of 8.09 percent from the date of the final order. NCNB also appeals as inadequate the district court's award of $7500 in attorney's fees.
 
 
 28
 Shumate executed a demand promissory note in favor of NCNB on December 23, 1981. The note provided for interest at the rate of twelve percent per annum and "reasonable attorney's fees" incurred in any collection effort. After Shumate filed for bankruptcy, NCNB obtained an order from the bankruptcy court which declared the debt to be nondischargeable due to Shumate's fraudulent concealment of certain cash assets. NCNB obtained summary judgment on the note in May 1988.
 
 
 29
 Generally, unsecured creditors are not allowed to recover postpetition interest. In re Twin Parks Ltd. Partnership, 720 F.2d 1374 (4th Cir.1983), cert. denied, 465 U.S. 1103 (1984). However, there is an exception to this rule where the underlying debt is not discharged in bankruptcy. Bruning v. United States, 376 U.S. 358 (1964). Therefore, we vacate this portion of the final order and remand to the district court so that it may enter an order awarding interest to NCNB at the contract rate of twelve percent through July 26, 1990.[4]
 
 
 30
 NCNB argues that "reasonable attorney's fees" should be interpreted under North Carolina law which defines these as fifteen percent of the "outstanding balance" on a note. N.C.Gen.Stat. § 6-21.2(2) (1990). This would entitle NCNB to approximately $30,000 in attorney's fees. Because we conclude that North Carolina law governs the interpretation of the contract, we also vacate this portion of the order and remand to the district court for a redetermination of attorney's fees.
 
 
 31
 Because the district court in this case sits in Virginia, it must follow Virginia's conflict of laws rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). Virginia requires that questions relating to the nature, validity, and interpretation of a contract be determined by the law of the place where the contract is made. Western Branch Holding Co. v. Trans Mktg. Houston, Inc., 722 F.Supp. 1339, 1341 (E.D.Va.1989). A contract is made where it is executed; it is executed where it is accepted. Id. Here, the note indicates that it was executed in Charlotte, North Carolina. Therefore, the law of North Carolina governs and NCNB should be awarded fifteen percent of the "outstanding balance" as attorney's fees.
 
 IV. CONCLUSION
 
 32
 Accordingly, we vacate and remand for redetermination of interest and attorney's fees in 90-2166, and affirm the orders of the district court in 90-2026 and 91-2155. We decline to award additional sanctions on appeal in 90-2026, and we deny Shumate's motion for preparation of a transcript at government expense in 90-2155. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 33
 No. 90-2026--AFFIRMED.
 
 
 34
 No. 90-2155--AFFIRMED.
 
 
 35
 No. 90-2166--VACATED AND REMANDED.
 
 
 
 [1]
 The order denying Rule 60(b) relief and Shumate's notice of appeal were filed in both the foreclosure case and the ongoing NCNB litigation. Because the foreclosure case was final, the denial of the 60(b) motion was a final, appealable order in that case
 
 
 [2]
 Shumate personally guaranteed various loans made to Coleman, and NCNB initially sued Shumate to recover a deficiency of more than $2,000,000 arising out of these guarantees. NCNB eventually dismissed its deficiency claim against Shumate as guarantor, rendering moot Shumate's claim for set-off against amounts owed under the guarantees
 
 
 [3]
 This section outlines the rights and duties of a secured party when collateral is in his possession
 
 
 [4]
 The district court's order grants interest from February 1, 1983 (the date Shumate filed his answer to the original complaint) rather than from the date of breach. However, because counsel for NCNB did not challenge the date from which interest was to accrue, we decline to address this issue